**Shirley SMITH, Claimant Below, Appellant,**

v.

**JAMES THOMPSON & CO., Employer Below, Appellee.**

**No. 610, 2005.**

Supreme Court of Delaware.

Submitted: Nov. 29, 2006.
Decided: Feb. 28, 2007.

■■■■■■■■■■■■■■■■
■■■■■■■■

Walt F. Schmittinger, Esquire, of Schmittinger and Rodriguez, P.A., Dover, Delaware, for Appellant.

Christopher T. Logullo, Esquire, of Chrissinger & Baumberger, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice, for the Majority.

In this appeal, we again consider whether a claimant who suffers a work-related injury is entitled to disability compensation based only on a treating doctor's instruction not to work. That was our holding in *Gilliard–Belfast v. Wendy's, Inc.*[1] Since the *Gilliard–Belfast* decision, however, questions have arisen about the scope and applicability of the "no work order" rule. The rationale of the *Gilliard–Belfast* rule is that, until the Industrial Accident Board decides the issue, a claimant should be able to rely on his or her doctor's determination that the claimant is not able to work. Thus, a claimant who suffers a work-related injury is entitled to total disability benefits from the time that the claimant's treating physician enters a no work order until the physician removes that restriction or the Board concludes that the claimant is not totally disabled. In this case, the Board and the Superior Court held that the claimant, whose doctor had given her a no work order, was not entitled to disability benefits. We reverse.

Factual and Procedural Background

Shirley Smith was working in the shipping department at James Thompson & Co. on August 9, 2002, when she injured her lower back. Smith began a conservative course of treatment with her primary physician, and others, but she continued to suffer pain despite medication and physical therapy. She began treating with Dr. Richard P. DuShuttle, an orthopedic surgeon, in May 2003. He ordered an MRI of Smith's spine, which revealed a herniated disc at L5–S1. Smith began treating with Dr. Ganesh Balu, a physiatrist, in September 2003. Over the next eight months, Balu gave Smith a series of injections, but they did not provide long-term relief. Balu referred Smith back to DuShuttle for a surgical consultation, but Smith was opposed to surgery.

In September 2004, Smith saw Balu and reported that she continued to have low-back pain. Smith wanted to return to work, however, because of her financial situation. Balu gave Smith a note authorizing light-duty work with the restriction that she not lift more than ten pounds and not be required to constantly sit, stand, walk or stoop. In October 2004, Smith went to work at Unitrac, where she worked full-time in a production job that required her to move around during the day. She reported to Balu that she was taking narcotic pain medication and that her low back and radicular pain were worsening.

Smith was laid off in November 2004, and did not return to work. On January 5, 2005, Balu examined Smith, who reported that her low back pain was increasing. Balu discussed treatment options, which included another surgical evaluation if Smith's symptoms continued to deteriorate. As of that date, however, Balu had not modified his prior work order, which allowed Smith to perform light-duty work with restrictions.

On January 10, 2005, Smith saw Balu's associate, Dr. Swami Nathan. She brought

1. 754 A.2d 251 (Del.2000).

a form that had to be completed in order to allow Smith to receive Medicaid and Food Stamps. Nathan completed the form with a note saying that Smith could not work and that her condition would last for 6 to 12 months. Smith next visited Balu on February 2, 2005. At that time, her condition remained the same. Smith was taking narcotic medications for her pain, and was considering surgery. Balu advised Smith to get a second opinion from Dr. Hermantin before surgery. Balu also advised Smith to stay off work, and gave her a note to that effect.

Smith and Thompson had entered into an agreement whereby she received total disability compensation for the period from May 3, 2003 through May 3, 2004. In September 2004, she filed a Petition to Determine Additional Compensation Due with the Industrial Accident Board. In the Petition, as amended, Smith sought additional total disability compensation beginning January 10, 2005. At the hearing on Smith's Petition, Thompson's doctor, Dr. William Barrish testified that Smith could return to light-duty work. The Board rejected Balu's testimony and concluded that Smith had not satisfied her burden of establishing a recurrence of total disability. The Superior Court affirmed the Board's decision and this appeal followed.

## Discussion

The issue presented by this appeal is *not* whether Smith established that she had a recurrence of total disability. The Board heard the evidence and concluded that Thompson's medical evidence was more credible than Smith's. This Court does not question that conclusion, which was supported by substantial evidence and is legally correct. The issue is whether, not-withstanding the Board's adverse decision, Smith is entitled to total disability compensation for the time before the Board's decision because she was under her doctor's order not to work.

In *Gilliard–Belfast v. Wendy's, Inc.,*[2] this Court held that "a person who can only resume some form of employment by disobeying the orders of his or her treating physician is totally disabled, at least temporarily, regardless of his or her capabilities."[3] The particulars of the claimant's medical condition were not significant to the Court's holding. Rather, the Court focused on the doctor/patient relationship and the risk to the claimant of disregarding her doctor's order:

> The Board ... held that Gilliard–Belfast had not established her entitlement to temporary total disability benefits while she was waiting to have ... surgery, even though the treating physician had ordered her not to work. The Board ruled that, ... "from a physical standpoint, Gilliard–Belfast has not been, and is not, totally disabled."

The precedential effect of the Board's decision would place injured workers in a completely untenable position. If a treating physician's order not to work is followed, the claimant risks the loss of disability compensation if the Board subsequently determines that the claimant could have performed some work. Conversely, if the treating physician's order not to work is disregarded, a claimant who returns to work not only incurs the risk of further physical injury but also faces the prospect of being denied compensation for that enhanced injury.[4]

This Court reaffirmed the *Wendy's* holding in *Clements v. Diamond State Port Corp.*[5] In *Clements,* the Board found that

---

**2.** *Id.*

**3.** *Id.* at 254.

**4.** *Id.* at 253.

**5.** 831 A.2d 870 (Del.2003).

the claimant was not a credible witness and that his subjective complaints had misled his treating physician. As a result, the Board concluded that the claimant could not rely on his physician's no work order. We reversed:

> The rationale for this Court's holding in *Gilliard–Belfast* was based upon the operative fact that, in the medical opinion of the claimant's treating physician, the claimant was totally disabled.
>
> That rationale is directly applicable to this case. Medical doctors must always make a diagnosis on the basis of all available data, including the patient's subjective complaints, as measured wherever possible by objective findings that are available upon physical examination and testing. Although there are exceptions, treating physicians are not easily misled into making a medical determination of total disability by malingers or patients with exaggerated subjective complaints that defy confirmation by an objective physical examination or test.
>
> The Claimant's general right to rely upon his treating physician's total disability opinion ... means that the Claimant had no obligation to either return to work on a limited basis with the Employer or to look for other employment until the Board makes that determination.[6]

Most recently, in *Delhaize America, Inc. v. Baker*,[7] the Board decided that the claimant, who suffered from chronic lower back pain before falling at work, failed to establish that she was totally disabled for any period of time. "Nonetheless, the Board determined that [the claimant] was totally disabled, as a matter of law, during the period that [her treating physician] ordered her not to work...."[8] In affirming the Board's decision, this Court explained:

> The *Gilliard–Belfast* rule applies to any claimant, whether the parties agree that the claimant is disabled or not. Simply stated, if a claimant is instructed by his treating physician that he or she is not to perform *any* work, the claimant will be deemed totally disabled during the period of the doctor's order. This rule assumes that the doctor acts in good faith, and does not extend beyond the time that the Board decides whether the claimant is disabled as a matter of fact.[9]

This case raises the question whether the *Gilliard–Belfast* rule applies if the Board determines that the treating physician had no medical basis for the no work order. Both the Board and the Superior Court noted the fact that Smith had been restricted to light-duty work as of January 5, 2005, but that Nathan provided a no work order on January 10, 2005, without any evidence that Smith's condition had changed in the intervening five days. In addition, when Balu entered his own no work order on February 2, 2005, he did so because he was referring her for a surgical evaluation. Balu testified that, if the surgeon were to decide that surgery was not an option, Balu would then allow Smith to return to work with some restrictions.

First, it is important to note that there is nothing in this record, or in the Board's findings, to suggest that Nathan and/or Balu failed to act in good faith. Nathan provided no testimony, so there is no basis on which to evaluate his medical reasoning. Balu explained that Smith had chronic

---

6. *Clements v. Diamond State Port Corp.,* 831 A.2d at 878–79.

7. 880 A.2d 1047, 2005 WL 2219227 (Del. Supr.).

8. *Id.* at 1047.

9. *Ibid.*

pain, which was worsening. At her visit on February 2, 2005, Smith told Balu that she was considering surgery. Balu referred Smith to Hermantin for a second opinion and told her to stay off work pending the surgical evaluation. While other doctors might disagree with his decision, it appears that Balu acted in good faith.

 The question then becomes whether the *Gilliard–Belfast* rule applies to a treating physician's good faith, no work order where the physician acknowledges that the claimant is capable of some form of work. We hold that it does. Balu decided that Smith should not work until a surgeon decided on her course of treatment. Maybe he thought it medically unwise to risk further aggravation of Smith's spinal problems before a possible surgery. Maybe he thought the surgeon would have a better appreciation of her medical condition if she had not been working before the visit. We do not know. But, unless the treating physician failed to act in good faith, we will not second-guess the physician's decision to enter a no work order. The *Gilliard–Belfast* rule applies, regardless of the reason for the doctor's decision to enter a no work order.

### Conclusion

Based on the foregoing, the judgment of the Superior Court is REVERSED and this matter is remanded for further action in accordance with this decision. Jurisdiction is not retained.

RIDGELY, Justice, dissenting:

I agree with the Superior Court that the Industrial Accident Board's decision to deny Smith's petition for additional compensation due for total disability benefits is supported by substantial evidence and is free of legal error. According to *Gilliard–Belfast v. Wendy's, Inc.* "a person who can only resume some employment by disobeying the orders of his or her treating physician is totally disabled, at least temporarily, regardless of his or her capabilities."[10] In *Clements v. Diamond State Port Corp.*[11] this Court explained that "[t]he rationale for this Court's holding in *Gilliard–Belfast* was based upon the operative fact that, in the medical opinion of the claimant's treating physician, the claimant was totally disabled."[12] In *Delhaize America, Inc. v. Baker* this Court announced an implicit assumption of the *Gilliard–Belfast* rule, namely "that the doctor acts in good faith."[13] Because these facts entitle a claimant to total disability benefits under our case law, even when the Board later determines that a claimant is in fact not totally disabled, Smith should have the burden of proving them. She did not.

In this case, the record shows that the treating physician did not hold a medical opinion that Smith was totally disabled. Nor did the treating physician give any medical reason for the no work order. Smith's treating physician explained under oath:

> I believe she's capable of modified duty work. But since we were approaching the case in a different way all together that we wanted to get a surgical opinion, I wanted her to be off work so she could address her scenario. If surgery is not an option, I would have her go back to work.[14]

We do not know what the treating physician meant when he said he wanted Smith to "address her scenario." The majority

**10.** 754 A.2d 251, 254 (Del.2000).

**11.** 831 A.2d 870 (Del.2003).

**12.** *Id.* at 870.

**13.** 880 A.2d 1047, 2005 WL 2219227 at *1 (Del.Supr.).

**14.** Appellant's Appendix at A–113.

opinion speculates upon what the treating physician may have thought before issuing the no work order and declines to second-guess the physician's decision. We should not be speculating about any fact, of course, because findings of fact are for the Board to make. Smith did not show that she was given a no work order from a treating physician who believed in good faith that for medical reasons she should not work. Because that proof is absent from the record, the Superior Court did not err when it affirmed the decision of the Board.

I respectfully dissent.