**James Edward MALCOM, Appellant-Employee,**

v.

**CHRYSLER CORPORATION, Appellee-Employer.**

Superior Court of Delaware.

New Castle.

June 12, 1969.

---

Julian D. Winslow, Wilmington, for appellant-employee.

Carl Schnee, Wilmington, for appellee-employer.

## OPINION

O'HORA, Justice.

James Edward Malcom ("claimant"), in the course of his employment with Chrysler Corporation ("employer") suffered a whiplash injury to his neck and a contusion of his right wrist, which he claims has caused him a lengthy period of unemployment for which he is entitled to compensation. Employer has admitted that claimant was injured in the course of his employment, but disputes his allegations that any disability resulted therefrom such as necessitated his unemployment. Following a hearing on July 17, 1968, the Industrial Accident Board dismissed claimant's petition for compensation, finding:

"2. That James Edward Malcom did not by a preponderance of competent medical and/or factual testimony establish that he suffered a compensable industrial injury on May 25, 1967 arising out of and in the course of his employment with Chrysler Corporation within the meaning of the Delaware Workmen's Compensation Law."

Claimant has appealed.

The quoted finding is ambiguous, for it may be interpreted as meaning that

claimant failed to establish the occurrence of an accident, whereas such an occurrence was admitted. Employer urges that the Board's language be construed in light of the record, which clearly reflects that the contested issue was the extent of claimant's disability. By considering " 'the substance of what transpired in the tribunal below and not the mere form,' " General Motors Corporation v. Thompson, C.A.No. 1276, 1962, dated April 18, 1963, needless delay will be avoided. The Court believes this to be an appropriate case to construe the language of the Board's finding, as urged by the employer.

The function of this Court in reviewing the findings of the Board on appeal is limited to determining whether the record contains substantial evidence to support the Board's findings. As stated in M. A. Hartnett, Inc. v. Coleman, 226 A.2d 910 (1967):

"* * * *Some* evidence, or *any* evidence may be insufficient to support the factual findings of the Board. The evidence must be substantial; * * *."

The record discloses the following salient facts: Claimant on May 25, 1967, the day of the accident, was employed as an "extra" man who filled in at various jobs for which the regular employee was absent. On this particular day he was driving cars off the assembly line. Fifteen minutes before quitting time he was thrown against the windshield of a car in which he was sitting when a "dog", designed to release the car, failed to function causing the car to stop suddenly. The blow to the top of his head resulted in compression of his cervical spine. He also hit his right wrist. Difficulty with his right hand led to his decision to discontinue work several days later.

Pain from the accident radiated from his neck down into his hand, becoming especially acute at night. His fingers were numb. He felt a "needles" sensation in his palm. He experienced a weakness in his grip. Both of his physicians testified regarding objective corroboration of these symptoms. Both attributed them to the plant accident.

The doctors' diagnoses do vary in significant particulars. One seems to consider the neck injury as minimal. By means of three electromyogram tests he has found a carpal syndrome indicating injury to the median nerve in the wrist, which accounts for weakness in claimant's thumb, pain and tingling in his fingers, and pain with the use or flexion of his hand. The tests also indicate an injury to the ulnar nerve behind the right elbow. This accounts for numbness and a pins and needles sensation in claimant's palm, a decrease in true pin perception in his hand, and weakness of the hand muscles. The result of such injuries is an inability to tighten a wrench, or to engage in repeated arm flexion and extension. Even the little effort required for handwriting may cause tiring. Whereas the median nerve shows signs of improving, the ulnar nerve seems to be getting worse. This doctor suggested as treatment a complete immobilization of the right arm, followed by surgery if immobilization does not result in sufficient improvement. He would at all events restrict claimant from moving his wrist back and forth an excessive amount (10 to 12 times per hour being excessive) and would permit claimant to lift 20 or 30 pounds repeatedly only if the left hand did most of the work.

The other doctor considers the neck injury as the source of all claimant's difficulties. He places the symptoms involved into two classes, physical and emotional. Physical symptoms are coldness of hand, swelling of fingers, aching hand, arm and shoulder, rigidity of neck and difficulty in moving upper extremities. Emotional symptoms are increased tension, nervousness and apprehension. Both are triggered by an injury to the sympathetic or involuntary nervous system, which is closely relat-

ed to the emotions, as evidenced, for example, by paling of the face with fear.

According to this last doctor, the accident has caused a reflex arch in a portion of the sympathetic nervous system. His treatment has consisted of periodically blocking this arch by paralyzing the nerve with novocain, a process which provided dramatic but only temporary relief from claimant's symptoms. After the last such ganglion block, however, claimant was able to move his upper extremities, which he had been unable to do at first. The doctor then prescribed therapeutic exercise, such as painting or light cleaning to build up claimant's tolerance to work. By following this prescription claimant has increased his ability to work from about two to perhaps four hours a day, although the effort continues to cause him some discomfort. All objective findings have now disappeared, but claimant continues to experience pain. The doctor assumes that claimant could return to driving cars off the assembly line.

This variation in the doctors' diagnoses and prescribed treatment cannot be disputed, yet it is of little importance because both agree that claimant has suffered disability as a result of the plant injury. Notwithstanding this disability, however, employer argues that claimant should have sought work within his capabilities. As evidence that claimant was far from disabled, employer introduced the testimony of a private detective, and a film which he took of claimant, tending to establish claimant's capacity for gainful employment.

The film and testimony show claimant, confronted with what he thought was a mechanical failure of his automobile [1], assisting the detection and repair of the trouble by pushing and lifting on the rear bumper, and by jacking the car up. They also show claimant working with his brother-in-law, an auctioneer, at an auction.

No great significance can be attributed to either incident. If claimant, suddenly threatened with the possibility of expensive car repairs at a time when he was unemployed and some distance from his home, disregarded his medical advice and over-exerted himself in order to cooperate with a helpful stranger who offered to locate, and later to correct the trouble, that does not establish claimant's ability to maintain a regular job. Quite the contrary, as claimant testified, the incident caused a marked intensification of his pain for several days thereafter. As for his working at the auction, that merely shows his ability to perform light tasks for short periods of time.

Perhaps somewhere, employment of some sort might have been available within claimant's physical capabilities. However, the testimony stands uncontroverted that despite claimant's willingness to be employed, employer would not accept his services without a release from his physician, which his physician refused to grant. It is a strained argument for employer to advance that although employer itself would not accept him without his doctor's approval, claimant nevertheless should have found a less particular employer who would have winked at his disobeying doctor's orders.

■ The record concludes with testimony given by two of employer's management personnel, purporting to establish that work within claimant's limitations was offered to him within a week after the accident, but that he chose not to accept it. The Board properly characterized the substance of this testimony as hearsay in light of the fact that neither of these witnesses had communicated with claimant personally. Furthermore, even if claimant had initially refused to return to work, a not unreasonable position considering his difficulty sleeping and inability to move his upper

1. The private detective wrapped some wire around the drive shaft which caused a loud noise when the car was started. Claimant was told what to do by another private detective who, posing as a helpful bystander, went under the car to remove the wire.

extremities, the fact remains that his subsequent attempts to secure his return to employer have met with no success due to his doctor's refusal to grant a release.

After a careful scrutiny of the entire record, this Court has no alternative but to conclude that the Board's finding is not supported by substantial evidence. All the competent testimony, medical and factual, leads irresistibly to the conclusion that claimant has been unemployed due to injuries received while working for employer. There is virtually no competent evidence to the contrary. Even assuming that claimant could, if absolutely necessary, physically maintain a job of some sort, he nevertheless remains "disabled" from the viewpoint of workmen's compensation so long as his treating physician insists that he remain unemployed in order to facilitate his recuperation.

It has been stated by our Supreme Court in M. A. Hartnett, Inc. v. Coleman, supra, that:

"* * * the essence of the test of total disability is 'the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps.'"

A workman who can resume his employment only by disobeying doctor's orders, and only then if an employer can be found willing to employ him against his doctor's advice, would certainly seem to be totally disabled under *Hartnett*, at least temporarily and regardless of his actual physical capabilities.

The case should be remanded to the Industrial Accident Board for further proceedings not inconsistent with this opinion.

It is so ordered.