Lolita GILLIARD–BELFAST,
Claimant Below,
Appellant,

v.

WENDY'S, INC., Employer
Below, Appellee.

No. 9, 2000.

Supreme Court of Delaware.

Submitted: May 23, 2000.
Decided: June 12, 2000.

John J. Schmittinger, Walt F. Schmittinger, Schmittinger and Rodriguez, P.A., Dover, for appellant.

James F. Bailey, Jr., Vance A. Funk, IV, Bailey & Wetzel, P.A., Wilmington, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from a final judgment of the Superior Court that affirmed a decision of the Industrial Accident Board ("Board"). The claimant-appellant is Lolita Gilliard–Belfast. The employer-appellee is Wendy's, Inc.

The Board determined that Gilliard–Belfast had sustained an industrial injury to her knee, for which a second surgical procedure was necessary and appropriate. Her treating physician ordered her not to work prior to the second operation. Nevertheless, the Board determined that Gil-

lard–Belfast was not totally disabled while she was waiting to have the operation performed.

Gillard–Belfast appealed the latter determination to the Superior Court. It affirmed the Board's decision denying total disability to Gilliard–Belfast during the time that she did not work prior to the second surgery. We have concluded that the judgment of the Superior Court must be reversed.

### Facts

On April 10, 1996, Gilliard–Belfast injured her right knee in a compensable work accident while working for Wendy's. Wendy's paid Gilliard–Belfast for a period of total disability, a lump sum commutation for partial disability, and an 11% permanent impairment for her right knee. On August 25, 1998, Gilliard–Belfast filed a Petition to Determine Additional Compensation Due seeking ongoing total disability benefits from June 6, 1998 and a determination that a prescribed arthroscopic knee surgery was compensable. The Board conducted a hearing regarding Gilliard–Belfast's petition on January 26, 1999.

Gilliard–Belfast testified that she was working as a cook and cashier for Wendy's on April 10, 1996, when she slipped and fell on a wet floor. During the fall, she heard something pop in her right knee. She was taken to the emergency room at the Milford Memorial Hospital for medical treatment.

Gilliard–Belfast first saw Dr. Rowe, an orthopedic surgeon, in May 1996. After an initial course of conservative treatment, Dr. Rowe performed surgery on August 26, 1996. Wendy's paid for this initial knee surgery. After the surgery, Dr. Rowe recommended a second surgery and restricted Gilliard–Belfast to sedentary duty.

Dr. DuShuttle, an orthopedic surgeon and former partner of Dr. Rowe's, testified by deposition on behalf of Gilliard–Belfast before the Industrial Accident Board. Dr.

DuShuttle saw Gilliard–Belfast for the first time on May 4, 1998. He diagnosed a meniscus tear and an underlying arthritic condition. Dr. DuShuttle performed a cortisone injection and ordered an MRI for Gilliard–Belfast. At this time, Gilliard–Belfast was put on light duty restrictions. Dr. DuShuttle testified that the work accident at Wendy's was the cause of both the meniscus tear and the flare-up of the preexisting arthritic condition.

On June 2, 1998, the MRI showed a separation of the lateral meniscus, mild to moderate arthritis, and a cyst in the knee. On June 10, 1998, Dr. DuShuttle recommended surgery and changed her work status from light duty restrictions to "no work" pending an anticipated arthroscopy procedure. Dr. DuShuttle testified that he did not believe Gilliard–Belfast could be on her feet for an eight-hour shift with her knee injury. Dr. DuShuttle also testified that he did not believe Gilliard–Belfast could perform any sedentary duty in June 1998. Dr. DuShuttle assumed that Gilliard–Belfast had been working for Wendy's in a light to medium duty capacity when, in actuality, she had been working for Playtex in June 1998.

Gilliard–Belfast returned to Dr. DuShuttle on August 6 and September 28, 1998, with the same knee complaints. Dr. DuShuttle had already recommended surgery, but Gilliard–Belfast was waiting for the surgery to be approved by the insurance carrier. Gilliard–Belfast testified that she was without the resources to pay for the surgery herself.

Dr. Sopa, an orthopedic surgeon, testified by deposition on behalf of Wendy's. Dr. Sopa examined Gilliard–Belfast, pursuant to Wendy's request for an separate medical examination,[1] on July 1, 1996, January 22, 1997, March 30, 1998 and November 18, 1998, and reviewed her medical records. He also diagnosed a lateral meniscal tear in the right knee as a result of the April 1996 work accident. Dr. Sopa concluded that Gilliard–Belfast's meniscal cyst reflected a degenerative condition.

1. 19 *Del.C.* § 2343.

Dr. Sopa recommended light duty work due to Gilliard–Belfast's degenerative changes.

Dr. Sopa testified that the arthroscopic surgery prescribed by Dr. DuShuttle was reasonable. He concluded, however, that Gilliard–Belfast's degenerative condition played a significant role in her need for surgery. The basis for this conclusion was that Gilliard–Belfast should have recovered from the work-related injury quickly. According to Dr. Sopa, although Gilliard–Belfast's symptoms immediately after the accident were ascribable to the work accident, the existence of a preexisting degenerative condition delayed her recovery.

### Board Decision

The Board accepted the unanimous view of the medical experts that Gilliard–Belfast's second knee surgery was reasonable and necessary. The Board found that Gilliard–Belfast's symptoms had never resolved and that Gilliard–Belfast's condition continued to be related to the work accident and not the result of a preexisting degenerative condition. The Board, in reliance upon the medical testimony of Dr. DuShuttle, held that the arthroscopic surgery he prescribed was causally related to the April 1996 work accident at Wendy's.

The Board did not find it reasonable, however, for Gilliard–Belfast to stay out of work while she was waiting to have the second surgery. The Board relied on the fact that, when Dr. DuShuttle gave Gilliard–Belfast a "no work" order, he thought her surgery could be completed in a few weeks and did not anticipate that he was disabling Gilliard–Belfast from work for eight months while she awaited surgery. In reliance upon the testimony of Dr. Sopa, the Board found that Gilliard–Belfast was capable of at least performing sedentary duties throughout the entire period of her alleged total disability, while she was waiting for the second surgery. The Superior Court affirmed the Board's decision.

### Total Disability Established

The Board held that Gilliard–Belfast did require arthroscopic surgery and that the need for surgery was due to her industrial accident at Wendy's.[2] The Board also held that Gilliard–Belfast had not established her entitlement to temporary total disability benefits while she was waiting to have that surgery, even though the treating physician had ordered her not to work. The Board ruled that, although Dr. DuShuttle gave her an order not to work, "from a physical standpoint, Gilliard–Belfast has not been, and is not, totally disabled."[3]

The precedential effect of the Board's decision would place injured workers in a completely untenable position. If a treating physician's order not to work is followed, the claimant risks the loss of disability compensation if the Board subsequently determines that the claimant could have performed some work. Conversely, if the treating physician's order not to work is disregarded, a claimant who returns to work not only incurs the risk of further physical injury but also faces the prospect of being denied compensation for that enhanced injury.

After the independent medical examination of Gilliard–Belfast by Dr. Sopa, Wendy's insurance carrier had notice that Dr. Sopa agreed the second surgery was necessary but disagreed with the treating physician's "no work" order. Wendy's has expressed concerns about the length of time that Gilliard–Belfast did not work prior to the second surgery. Those concerns would have been ameliorated if Wendy's insurance carrier had either expedited its authorization for the second surgery or requested Gilliard–Belfast's treating physician to reconsider his "no work" order.

The Board's decision to deny Gilliard–Belfast compensation for total disability while she waited for a second

---

2. *Gilliard–Belfast v. Wendy's, Inc.*, IAB Hearing No. 1082473 (February 3, 1999) at 6.

3. *Id.* at 7.

operation is contrary to well-established Delaware law. Dr. DuShuttle was Gilliard–Belfast's treating physician. On June 10, 1998, Dr. DuShuttle wrote that Gilliard–Belfast should not work at all until the second surgery had been performed. Thirty years ago, the Superior Court held that "[e]ven assuming that claimant could, if absolutely necessary, physically maintain a job of some sort, he nevertheless remains "disabled" from the viewpoint of workmen's compensation so long as his treating physician insists that he remain unemployed...." [4] We agree. We hold that a person who can only resume some form of employment by disobeying the orders of his or her treating physician is totally disabled, at least temporarily, regardless of his or her capabilities.[5]

### Conclusion

The judgment of the Superior Court is reversed. This matter should be remanded to the Industrial Accident Board for the entry of a judgment in accordance with this opinion.

---

4. *Malcom v. Chrysler Corp.*, Del.Super., 255 A.2d 706, 710 (1969).

5. *Id. Accord M.A. Hartnett, Inc. v. Coleman*, Del.Supr., 226 A.2d 910, 913 (1967).