WADE INSULATION, INC.,
Employer/Appellee Below,
Appellant,

v.

Michael VISNOVSKY,
Claimant/Appellant
Below, Appellee.

No. 457, 2000.

Supreme Court of Delaware.

Submitted: March 20, 2001.
Decided: June 1, 2001.

Raymond W. Cobb, Esquire, of Raymond W. Cobb, LLC, Wilmington, for Appellant.

John J. Schmittinger, Esquire, and Walt F. Schmittinger, Esquire (argued), of Schmittinger and Rodriguez, P.A., Dover, for Appellee.

Before VEASEY, Chief Justice, WALSH and BERGER, Justices.

BERGER, Justice.

This appeal involves an Industrial Accident Board decision granting an employer's petition to terminate a claimant's temporary total disability benefits. The sole question is whether claimant was required to conduct a job search before his treating physician expressly released him to return to work. The answer is very fact-specific. In this case, claimant's doctor had never directly ordered him not to work; the surgery that temporarily disabled claimant apparently was successful; and the normal recuperative period had long passed. Under these circumstances, we hold that claimant was required to undertake a reasonable job search to establish his status as a displaced worker. Since the Board's finding that claimant failed to conduct a reasonable job search is supported by substantial evidence, its decision should have been affirmed.

Factual and Procedural Background

Michael Visnovsky sustained a work-related injury in 1988, while employed by Wade Insulation, Inc. He received total disability benefits until January 1990 and then 300 weeks of partial disability benefits. In February 1998, Visnovsky filed a petition for additional compensation and authorization for low back surgery. The Board denied the requested disability benefits, but authorized the surgery.

On October 16, 1998, Dr. Michael Sugarman performed low back surgery on Visnovsky. Approximately one month after the surgery, at Visnovsky's first follow-up visit, Sugarman noted that Visnovsky was walking on crutches, although in pain. Sugarman stated that Visnovsky's x-rays looked good and that he was "making excellent progress." Sugarman started Visnovsky on physical therapy at that time. In January 1999, approximately three months after the surgery, Sugarman examined Visnovsky again. Visnovsky no longer needed crutches, his x-rays showed his spine to be in "excellent alignment," and the bone fusion was "starting to take . . . ."

In March 1999, Wade filed a petition to terminate Visnovsky's temporary total disability benefits. Sugarman saw Visnovsky two more times between the filing of the petition and the August 1999 hearing. In April 1999, Sugarman examined Visnovsky and reported that his patient was using a cane, but still had limited range of motion in his back and pain in his low back and leg. Sugarman saw Visnovsky again on July 22, 1999, approximately one week before the Board hearing. Visnovsky told

Sugarman that he still was having back and leg discomfort and that prolonged activity made it worse. Sugarman stated that the fusion appeared to have "taken" but that Visnovsky was progressing slowly.

Sugarman testified by deposition. He was asked to evaluate Visnovsky's ability to work and opined that, as of July 22, 1999, Visnovsky could try working a few hours per day at a job that requires no prolonged periods of sitting, standing or walking, and no lifting of more than 30—40 pounds. On further questioning, Sugarman stated that Visnovsky could have attempted a light duty job six months after the surgery and that Sugarman "probably" would have given Visnovsky permission to try such work if Visnovsky had asked.

Dr. Alan Fink examined Visnovsky at Wade's request on January 26, 1999. Fink testified by deposition that Visnovsky required three months to recuperate from the surgery and that, as of the date of his examination, Visnovsky was capable of working full-time in a sedentary job that does not require lifting more than 10 pounds. Fink agreed that it would be preferable for Visnovsky to start out working only 20 hours per week and increase to full-time over three months.

The Board accepted Fink's opinion and determined that Visnovsky no longer was physically disabled from working. The Board then considered whether Visnovsky was totally disabled economically, either because he was *prima facie* a "displaced worker," or because he was unable to find work after undertaking a reasonable job search. The Board concluded that Visnovsky was not *prima facie* displaced and that he had not conducted a "genuine" job search. As a result, it granted Wade's petition to terminate disability benefits as of March 17, 1999.

On appeal, the Superior Court found substantial evidence to support the Board's conclusion that Visnovsky failed to conduct a reasonable job search. Nonetheless, based on its reading of *Gilliard–Belfast v. Wendy's, Inc.*[1], the trial court held that the Board erred as a matter of law. The Superior Court ruled that the Board may only consider the adequacy of a job search undertaken after the claimant's doctor releases the claimant to work. The Superior Court found that Sugarman effectively released Visnovsky to work on July 26, 1999 (at Sugarman's deposition) and that Visnovsky did not have enough time between July 26th and the August 3rd hearing to conduct a meaningful job search. Accordingly, the Superior Court reversed the Board's decision.

### Discussion

The standards governing an employer's petition to terminate disability benefits are well settled:

[A] former employer bears the initial burden of demonstrating that the employee is no longer totally incapacitated for the purpose of working. If the ·employer satisfies that burden, the employee must show that she is a "displaced worker." A worker is displaced if she "is so handicapped by a compensable injury that [s]he will no longer be employed regularly in any well known branch of the competitive labor market. . . ." The employee's "physical impairment, coupled with other factors such as the injured employee's mental capacity, education, training, or age" may constitute a *prima facie* showing that the employee is displaced. [Even if not *prima facie* displaced,] she is a displaced worker and deemed "totally disabled" . . . if she "has made reasonable

---

1. Del.Supr., 754 A.2d 251 (2000).

efforts to secure suitable employment which have been unsuccessful because of the injury." Assuming that the employee can demonstrate that she is displaced, the burden shifts back to the employer to show the availability of work within the employee's capabilities.[2]

The Board found that, as of March 17, 1999, Visnovsky no longer was totally disabled. It also decided that Visnovsky is not so limited by his physical restrictions, age, education, etc. that he is a *prima facie* displaced worker. Those decisions are supported by substantial evidence and were not appealed to the Superior Court. The Board also found that Visnovsky did not conduct a reasonable job search. That finding, too, is supported by substantial evidence: (i) Visnovsky contacted employers about jobs he clearly could not undertake, given his physical limitations; (ii) he could not recall what he did to pursue those jobs that appeared to be within his capabilities; and (iii) he apparently failed to follow-up in those cases where he was waiting for a call back from the employer.

▉▉▉ Wade raises only one issue on appeal—whether the Superior Court properly applied *Gilliard–Belfast* when it held that Visnovsky could not be required to undertake a job search before July 26, 1999.[3] In *Gilliard–Belfast*, claimant injured her knee while working and received total and partial disability benefits. Two years later, she petitioned for additional disability benefits and authorization for a second surgery. Claimant's doctor specifically instructed claimant to perform no work while awaiting the second knee sur-

gery, and claimant followed her doctor's orders. The Board decided that the surgery was necessary, but denied temporary total disability benefits because it agreed with the employer's doctor, who opined that claimant could have performed sedentary work prior to the second surgery. This Court reversed, holding that "a person who can only resume some form of employment by disobeying the orders of his or her treating physician is totally disabled, at least temporarily, regardless of his or her capabilities."[4]

*Gilliard–Belfast* did not address the adequacy of a claimant's job search or any other aspect of the displaced worker doctrine. All it did was to reiterate settled law that a claimant whose doctor orders him not to work must be deemed temporarily totally disabled. Visnovsky was under no such orders; he and his doctor never even discussed the subject. If they had, Sugarman acknowledged that he probably would have authorized Visnovsky to start work, on a part-time basis, four months before the Board hearing. Thus, this is not a case where Visnovsky would have been violating his doctor's orders if he had returned, or attempted to return, to work. Accordingly, *Gilliard–Belfast* is inapposite and the Superior Court's decision must be reversed.

Although our decision here resolves Visnovsky's claim, we note that the Superior Court's opinion may raise questions about other claims. The court suggested that, in the future, employers seeking to terminate disability benefits will be required to undergo a two-step process. First, employ-

---

**2.** *Torres v. Allen Family Foods,* Del.Supr., 672 A.2d 26, 30 (1995) (Citations omitted.)

**3.** Visnovsky attempts to raise other issues, such as whether the displaced worker doctrine should be repudiated and whether the Board properly determined that Visnovsky was not *prima facie* a displaced worker. We

will not address those issues, however, as Visnovsky did not file a cross-appeal and it does not appear that he raised those claims in the Superior Court. See: Supr. Ct. Rules 7, 8.

**4.** *Gilliard–Belfast v. Wendy's, Inc.,* 754 A.2d at 254.

ers will have to obtain a Board determination that the claimant is able to return to work. Then, after giving the claimant a reasonable amount of time to conduct a job search, employers will have to seek a Board determination that the claimant is not a displaced worker. We do not believe that such a sweeping change is mandated by *Gilliard–Belfast.*

## Conclusion

Based on the foregoing, the decision of the Superior Court is reversed and this matter is remanded for further action in accordance with this opinion.