IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CAPITAL UNIFORM & LINEN SERVICE,:

                                  :    C.A. No. K16A-06-003 WLW

      Employer Below,         :    Kent County

      Appellant and Cross-Appellee, :

                                    :

   v.                              :

                                    :

REGINALD MARTIN,          :

                                    :

      Claimant Below,          :

      Appellee and Cross-Appellant. :

Submitted: November 3, 2016
Decided: February 13, 2017

**ORDER**

Upon an Appeal from the Decision of
the Industrial Accident Board.
*Reversed and Remanded.*

Robert H. Richter, Esquire and Nathan V. Gin, Esquire of Elzufon Austin Tarlov & Mondell, P.A., Wilmington, Delaware; attorneys for Employer-Below/Appellant.

Christopher A. Amalfitano, Esquire of Ramunno & Ramunno, P.A., Wilmington, Delaware; attorney for Claimant-Below/Appellee.

WITHAM, R.J.

Employer-Below/Appellant/Cross-Appellee Capital Uniform & Linen Service ("Capital") appeals from a portion of an amended decision and award of the Industrial Accident Board (the "Board"). Claimant-Below/Appellee/Cross-Appellant Reginald Martin has purported to conditionally withdraw his cross-appeal.

In its amended decision, the Board determined that Mr. Martin had suffered injuries causally related to a work accident he suffered in 2013. It awarded total disability benefits from April 30, 2014 until August 30, 2015, partial disability benefits from August 30, 2015 until December 23, 2015, and total disability benefits from December 24, 2015 and ongoing.

Capital argues that the Board erred when it awarded total disability benefits from December 24, 2015 onward. In particular, Capital argues that the Board's determination was not based on substantial evidence because it failed to reconcile inconsistencies in the testimony of one of Mr. Martin's witnesses. Mr. Martin argues that the Board based its decision on substantial evidence and had no duty to reconcile conflicting testimony.

Because the Board failed to articulate how it reconciled the conflict in the witness's testimony, its decision is **REVERSED** and **REMANDED**. Mr. Martin shall show cause why his cross-appeal should not be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Martin suffered injuries while onboard a delivery truck owned by Capital in 2013. His injuries, including disc injuries in his cervical spine, were eventually treated surgically.

At the hearing[1] on Mr. Martin's Petition to Determine Compensation Due, Mr. Martin testified regarding the incident, his injuries, and treatment. He also testified as to his conversations with Dr. James Zaslavsky, a board-certified orthopedic surgeon who treated Mr. Martin. When questioned, Mr. Martin's attorney asked him whether his meeting with Dr. Zaslavsky in December included a no-work order from the doctor:

> Q: So is it fair to say in your last meeting with Dr. Zaslavsky that you're under the impression that he's again taking you out of work?
> A: Yes, sir.[2]

The parties summarized and entered into evidence the deposition transcript of Dr. Zaslavsky. During the deposition, the doctor indicated that Mr. Martin was out of work on his orders:

> Q: And how long did you continue him out of work, Doctor? Do you remember?
> A: We still have him out of work at this time.
> Q: He's still out of work?
> A: He's still out of work. He continues to develop some numbness and tingling.
> Q: Under your orders?
> A: Under my orders, and we're trying to resolve that. . . .
> . . . .
> A: And we're hopefully going to get him back to some kind of gainful

---

[1] The hearing was held before a Hearing Officer, acting with the same authority as the Board, by stipulation of the parties under 19 *Del. C.* § 2301B. Hr'g Tr. 3:3–6.

[2] Hr'g Tr. 24:16–19; *see also id.* at 39:15–16 (decrease in pain is because "I haven't returned back to work").

3

employment.[3]

Only shortly thereafter, still on direct, he testified that Mr. Martin was actually on light duty:

> Q: My last visit with Mr. Martin was on 12/23/2015. He's currently on light duty. He was on light duty since August of 2015. . . .
>
> . . . .
>
> Q: Do you think it would be safe for him to return to that job [as a truck driver] at this time or from August?
> A: Not quite at this time. . . . We do have him at light duty. I do think that he will eventually be ready to return to that job; and if there's a light-duty position at this time that his company has available for him, he could start at that level job right now.[4]

When asked about when he might be able to conclude Mr. Martin was ready for work hardening,[5] Dr. Zaslavsky responded:

> A: I would hope that within six weeks we should be able to come up with a decision about his ability to return to his previous job level.[6]

On cross-examination, Dr. Zaslavsky indicated Mr. Martin was still on light duty at the time of the deposition:

> Q: And as of August 26, you saw him on August 26 and you released

---

[3] Zaslavsky Dep. 26:5–14, 21–22.

[4] *Id.* at 34:2–4, 15–23.

[5] "Work hardening" refers to a multidisciplinary occupational therapy approach designed to "restore the work performance skills of workers recovering from long-term injury or illness." Julie Dorsey et al., *Work Rehabilitation*, American Occupational Therapy Association (2012), http://www.aota.org/About-Occupational-Therapy/Professionals/WI/Work-Rehab.aspx.

[6] *Id.* at 38:10–12.

him to light duty on August 31st, 2015; correct?
A: Correct.
Q: And he's been able to do light duty ever since August 31st, 2015.
A: That's correct.[7]

The Board's amended order found the injuries to be causally related to a work accident and, among other things, awarded total disability benefits from April 30, 2014 until August 30, 2015, partial disability benefits from August 30, 2015 until December 23, 2015, and total disability benefits from December 24, 2015 and ongoing.

This appeal followed. Mr. Martin filed a cross-appeal, which he later attempted to conditionally withdraw.

## THE PARTIES' CONTENTIONS

The Employer contends that the Board's decision is not based upon substantial evidence because the Board failed to reconcile Dr. Zaslavsky's inconsistent testimony. The Employer further argues that the Board erred as a matter of law by holding that Mr. Martin was entitled to rely on Dr. Zaslavsky's no-work order in December 2015.

Mr. Martin contends that the Board was not under a duty to resolve the conflicting testimony and appears to concede that the testimony was inconsistent. To the extent it was inconsistent, he argues, the Board was merely harmonizing Dr. Zaslavsky's testimony with Mr. Martin's testimony that he believed he was under a

---

[7] *Id.* at 40:12–18.

no-work order.

## STANDARD OF REVIEW

This Court's function on an appeal from a Board decision is limited. The Court "review[s] the record to determine whether the Board's decision is supported by substantial evidence and is free from legal error."[8] "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] "The Board's responsibility is to resolve conflicts in the evidence and to articulate that resolution in its decision."[10]

When the issue appealed from is solely a question of law, the Court reviews its decision *de novo*.[11] Otherwise, the Court reviews for an abuse of discretion.[12]

## DISCUSSION

By failing to expressly reconcile contradictory testimony by Dr. Zaslavsky, the Board did not base its determination on substantial evidence.

Mr. Martin's argument that the Board does not have a duty to resolve conflicting testimony is patently without merit. Mr. Martin sought to distinguish several early cases where the contrary rule was applied by pointing out that they

---

[8] *Vincent v. E. Shore Mkts.*, 970 A.2d 160, 163 (Del. 2009).

[9] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988) (citing *DiFilippo v. Beck*, 567 F. Supp. 110, 113 (D. Del. 1983) (applying state law in diversity)).

[10] *Pantoja v. J.C. Penney Co., Inc.*, No. 03A-01-001, 2004 WL 838636, at *2 (Del. Super. Apr. 19, 2004) (citing *Venture Milling Co. v. Bennett*, No. 94A-08-003, 1995 WL 156225, at *3 (Del. Super. Feb. 27, 1995), *aff'd*, 690 A.2d 467 (Table), 1996 WL 731723 (Del. Dec. 5, 1996)).

[11] *Vincent*, 970 A.2d at 163.

[12] *Id.*

involved Division of Motor Vehicle hearings or were decided prior to the current Administrative Code.[13] While those arguments may hold sway as to those early cases, this Court has imposed a duty to resolve conflicting testimony more recently, including in reviewing Industrial Accident Board decisions, long after the adoption of the Administrative Code.[14]

The Board failed to meet its responsibility to articulate how it resolved Dr. Zaslavsky's conflicting testimony. Its decision makes no mention of the doctor's testimony that Mr. Martin was actually on light duty as of December 23. Its analysis is limited to a single sentence on page thirteen of its decision: "Dr. Zaslavsky . . . recommended that Claimant remain out of work for at least another six weeks, to allow Claimant time to continue treating for physical and mental health issues that arose from the work accident." This threadbare recital of a portion of the doctor's testimony is not enough to discharge the Board's duty to articulate how it arrived at its interpretation of the doctor's alternating testimony. This insufficiency in the record merits remand under 29 *Del. C.* § 10142(c).

Assuming that Dr. Zaslavsky did give Mr. Martin a no-work order, Capital argues that the Board erred as a matter of law by permitting Mr. Martin to rely on a no-worker order when that no-work order followed "a closed period of sedentary/light

---

[13] *Venture Milling Co.*, 1995 WL 156225, at *3; *Attix v. Voshell*, 579 A.2d 1125, 1127–28 (Del. Super. 1989).

[14] *See, e.g.*, *Pantoja*, 2004 WL 838636, at *2 (citing *Venture Milling Co.*, 1995 WL 156225, at *3).

duty work."[15] It is well-established that "a person who can only resume some form of employment by disobeying the orders of his or her treating physician is totally disabled, at least temporarily, regardless of his or her capabilities."[16] Stated differently:

> [I]f a claimant is instructed by his treating physician that he or she is not to perform *any* work, the claimant will be deemed to be totally disabled during the period of the doctor's order. This rule assumes that the doctor acts in good faith, and does not extend beyond the time that the Board decides whether the claimant is disabled as a matter of fact.[17]

Capital relies on no authority for its argument that the application of this established rule should be restricted to an initial period of total disability. The Court declines Capital's invitation to create a new rule of law restricting the application of the settled rule from *Gilliard-Belfast*.

The parties raise a number of ancillary points, including Capital's good faith and Mr. Martin's expectation of returning to work with Capital, that were not raised below and are well outside the scope of this appeal.

The Court also holds that Mr. Martin's attempt to "conditionally withdraw" his cross-appeal, subject to the Court making certain directives to the Board upon remand, is not a procedure authorized by the Superior Court Civil Rules. The Court thus finds it appropriate that his cross-appeal be dismissed *sua sponte* under Rule

---

[15] Appellant's Opening Br. 18.

[16] *Gilliard-Belfast v. Wendy's, Inc.*, 754 A.2d 251, 254 (Del. 2000).

[17] *Delhaize Am., Inc. v. Baker*, 880 A.2d 1047 (Table), 2005 WL 2219227, at *1 (Del. Aug. 12, 2005).

72(i).

## CONCLUSION

Because the Board failed to expressly reconcile the conflicting testimony, its decision is **REVERSED** and **REMANDED**. Upon remand, the Board is directed to articulate how it reconciled Dr. Zaslavsky's contradictory statements as to whether he issued a no-work order on December 24, 2015.

The Prothonotary shall forward notice to Mr. Martin directing that he show cause, within ten days of the notice, why his cross-appeal should not be dismissed for failure to diligently prosecute the cross-appeal, failure to comply with Rule 72(i) relating to voluntary dismissal, and failure to comply with the Court's briefing schedule. Should he fail to respond within fifteen days, the Court will dismiss his cross-appeal.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

9