IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| UNITED PARCEL SERVICE, | § | |
| | § | No. 244, 2025 |
| Employer Below, Appellant, | § | |
| | § | Court Below – Superior |
| v. | § | Court of the State of |
| | § | Delaware |
| ASHLEY A. SMITH, | § | |
| | § | C.A. No. N24A-10-006 |
| Claimant Below, Appellee. | § | |
| | § | |

Submitted: December 3, 2025
Decided: February 26, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

Upon appeal from the Superior Court of the State of Delaware. **AFFIRMED.**

Brandon R. Herling, Esq., WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP, New Castle, Delaware, *for Appellant United Parcel Service.*

Jonathan B. O'Neill, Esq., KIMMEL, CARTER, ROMAN, PELTZ & O'NEILL, P.A., Newark, Delaware, *for Appellee Ashley A. Smith.*

**GRIFFITHS**, Justice:

United Parcel Service ("UPS") challenges an Industrial Accident Board ("IAB" or "Board") decision and order granting Ashley A. Smith, a UPS employee, additional workers' compensation benefits. On February 3, 2022, Smith, while delivering a package for UPS, fell off a truck and injured her neck and back. The parties agreed that Smith was entitled to workers' compensation for her injuries. However, the parties disagreed on two issues: whether Smith's injury required her to undergo two back surgeries; and whether Smith's total-disability status ended in December 2023.

The parties argued these issues before the IAB. The Board found in favor of Smith on the first issue but agreed with UPS on the second issue. Following motion practice, the Board issued a clarifying order. The order reversed the Board's prior determination on the second issue and granted Smith additional compensation for remaining totally disabled beyond December 2023.

UPS appealed to the Superior Court. UPS argued that the Board erred when it construed certain parts of a witness's testimony as misstatements. In doing so, UPS claimed that the Board made factual findings unsupported by the record and denied UPS the chance to cross-examine the witness on the "altered testimony." UPS also argued that the Board exceeded its authority in reversing its prior determination – that Smith's disability status ended in December 2023. The

Superior Court held that both arguments lacked merit and affirmed. UPS appealed to this Court asserting the same two grounds. We affirm.

## FACTUAL & PROCEDURAL BACKGROUND

UPS is one of the world's largest package delivery companies. Ashley A. Smith worked for UPS as a delivery driver.[1] On February 3, 2022, while delivering a package, Smith fell off a UPS truck and injured her neck and back.[2] UPS acknowledged that Smith was acting within the scope of her employment when she fell.[3]

Smith sought medical treatment for her injuries and was initially diagnosed with a strained neck and back.[4] Smith underwent physical therapy and sought treatment from two pain management specialists.[5] Throughout 2022 and early 2023, the pain management specialists gave Smith multiple steroid injections for lumbar pain and performed several nerve ablation procedures on her.[6] Despite these treatments, Smith's condition worsened.

---

[1] Opening Br. 1, 4 (July 7, 2025).

[2] App. to Opening Br. at A100 [hereinafter "A_"] (Dep. of Mark Eskander, M.D. dated Apr. 8, 2024, at 8:9–15 [hereinafter "Eskander Dep."]).

[3] Opening Br. 4.

[4] A101 (Eskander Dep. 9:3–8).

[5] A101, A102 (Eskander Dep. 9:9–13, 10:9–13).

[6] A106–13 (Eskander Dep. 14:6–21:5).

In May 2023, Dr. Mark Eskander evaluated Smith and recommended surgery.[7] He declared Smith totally disabled and advised her to suspend all physical labor, including her work at UPS.[8] Dr. Eskander performed cervical spine surgery and lower back surgery on Smith in May and October 2023, respectively.[9] By December 2023, Smith's condition had improved, but Dr. Eskander continued to characterize her as totally disabled.[10] He also advised that she refrain from physical labor during her "recovery stage."[11]

In July 2023, Smith filed a claim with the IAB against UPS requesting workers' compensation for medical expenses (including her two surgeries with Dr. Eskander), as well as lost wages for the time she was totally disabled.[12] Dr. Eskander provided testimony by deposition in support of Smith's claim. Dr. Eskander testified that Smith's surgeries stemmed directly from her accident on February 3, 2022.[13] But Dr. Eskander also gave conflicting testimony as to the date of the accident. For example, on one occasion during his deposition, he stated that the accident occurred

---

[7] A113–16 (Eskander Dep. 21:6–24:3).

[8] *Id.*

[9] A116, A122–23 (Eskander Dep. 24:4–22, 30:23–31:17).

[10] A127 (Eskander Dep. 35:13–21).

[11] *Id.*

[12] A207 (Pet. to Determine Add'l Comp. Due to Injured Emp. dated July 19, 2023).

[13] A125 (Eskander Dep. 33:9–18); *see also* A114–15, A120, A129 (Eskander Dep. 22:24–23:3, 28:15–19, 37:2–5).

4

in February 2023.[14] In other instances, Dr. Eskander said that Smith had her first surgery three to six months after the accident, which again suggested that she was injured in February 2023.[15] Ultimately, Dr. Eskander concluded that Smith remained totally disabled and should continue to avoid physical labor.[16]

UPS retained Dr. Scott Rushton as its expert witness. Dr. Rushton examined Smith's medical records and hypothesized that Smith had a second accident in February 2023.[17] Dr. Rushton supported his theory by comparing Smith's MRI reports from 2022 to those from 2023, observing that the difference between MRI findings was "consistent with a second injury."[18] Dr. Rushton also referenced a medical record created by Dr. Eskander. In the medical record, Dr. Eskander wrote: "The pain began after [Smith] fell at work. The pain resolved and she fell again on 2/3/2023, landing on her hands and knees."[19] Dr. Rushton opined that the existence

---

[14] A113 (Eskander Dep. 21:14–15) (describing Smith's medical history and stating that her pain "began after she fell at work . . . on 2/3 of '23").

[15] A110, A113–14, A126 (Eskander Dep. 18:4–11, 21:21–22:10, 34:21–24) ("Typically the surgical window for these types of issues is between three and six months, so if the injury occurred in February, you really want to try physical therapy, injections, medicines, and let the body heal with time, you know, up until that window. So [the pain management specialists were] doing just that. . . . When I examined her . . . . [m]y plan at this time was to offer her surgical treatment because she was in that three-month window. . . . That's really exhausting conservative care. You really have to get people to, you know, again, that window three to six months after their injury.").

[16] A127–29 (Eskander Dep. 35:13–37:1).

[17] A61 (Dep. of Scott A. Rushton, M.D. dated Apr. 11, 2024, at 32:13–15 [hereinafter "Rushton Dep."]); *see also* Opening Br. 8–11.

[18] A51–52 (Rushton Dep. 22:12–23:9).

[19] A48 (Rushton Dep. 19:3–15).

of a second accident severed the causal link between the work accident in February 2022 and Smith's 2023 surgeries.[20] He also concluded that Smith had recovered and was no longer totally disabled as of December 2023.[21]

The IAB held a hearing on April 18, 2024 to address two issues: whether Smith's surgeries were necessitated by her February 3, 2022 accident or by a second accident on February 3, 2023; and whether Smith remained totally disabled after December 2023.[22] On July 10, 2024, the Board determined that: (1) the alleged February 2023 accident never occurred, and, therefore, the two surgeries were proximately caused by Smith's February 2022 work accident; and (2) Smith's total-disability status ended in December 2023 (the "Decision").[23] The Board noted that Dr. Eskander's references to a 2023 accident simply "misstated the year of [Smith's] accident."[24]

---

[20] A45, A59–60 (Rushton Dep. 16:4–14, 30:3–31:9).

[21] A60–61 (Rushton Dep. 33:3–34:2).

[22] *See generally* A6–25 (Decision on Pet. for Rev. & Pet. to Determine Add'l Comp. Due dated July 10, 2024 [hereinafter "*Decision*"]).

[23] *Decision* at 20; *see also id.* at 17–18 ("On the day of the hearing, [Smith] testified that she felt pretty good. She said that she continued to have some burning in her back, but her condition had improved since her surgeries. The Board is satisfied that the evidence presented shows that [Smith] is no longer totally disabled and that her total disability status ended as of December 31, 2023.").

[24] *Id.* at 13 ("Dr. Eskander repeatedly refers to only one, single accident as the cause of [Smith]'s injuries. Additionally, [Smith] credibly testified that she did not fall on February 3, 2023. The Board believes it is more likely than not that Dr. Eskander's reference to a February 3, 2023, accident is a simple error in which he misstated the year of [Smith's] accident. Accordingly, the Board finds that [Smith's] sole date of injury in the instant matter is February 3, 2022.").

Smith subsequently filed a motion for clarification with the IAB. She requested that the Board explain how it found that her total-disability status ended when her treating physician explicitly instructed her not to return to work.[25] In response to Smith's motion, the Board acknowledged that it had misapplied Delaware law.[26] The Board, through an order, reversed its prior holding on Smith's disability status and held that she would remain disabled until Dr. Eskander advised that she could return to work (the "Order").[27]

UPS appealed to the Superior Court claiming that the Board made two legal errors. First, UPS contended that the Board erred by construing Dr. Eskander's testimony as misstatements and then basing its factual determinations on a record it had altered.[28] Second, UPS argued that the Board exceeded its scope of authority in reversing its determination on Smith's disability status.[29] The court affirmed the

---

[25] A26 (Decision & Order on Claimant's Mot. for Clarification dated Sept. 27, 2024, at 2 [hereinafter "*Order*"]).

[26] *Order* at 3 ("Under Delaware case law, when a treating physician has instructed a claimant to stay out of work, that claimant is entitled to rely on the doctor's instructions and thus is considered temporarily totally disabled regardless of actual physical condition.") (citing *Gilliard-Belfast v. Wendy's Inc.*, 754 A.2d 251, 254 (Del. 2000)).

[27] *Id.* at 4.

[28] A194–95 (Opening Br. in Support of Appeal from the Order & Decision of the Indus. Accident Bd. dated Jan. 27, 2025, at 11–12).

[29] A204–05 (*Id.* at 21–22).

Decision and the Order.[30] UPS appealed to this Court. It asserts the same two issues it raised below.

## STANDARD OF REVIEW

In reviewing appeals from administrative agencies "where the Superior Court did not receive any evidence other than that presented to the agency, 'we do not review the Superior Court's decision directly' but instead 'examine the agency's decision to determine whether the agency's ruling is supported by substantial evidence and free from legal error.'"[31] Questions of law are reviewed *de novo*.[32] "To the extent that [the] appeal involves a factual determination . . . [this] Court determines whether substantial evidence supports the findings below."[33] "'Substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[34]

---

[30] *UPS v. Smith*, 2025 WL 1433845, at *2 (Del. Super. May 19, 2025).

[31] *Gala v. Bullock*, 250 A.3d 52, 64 (Del. 2021) (quoting *Delaware Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 951 (Del. 2020)).

[32] *Id.*

[33] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994).

[34] *Id.*

## ANALYSIS

*A. The IAB's "Alteration of the Record" Did Not Affect Its Factual Findings*

UPS claims that the Board rewrote Dr. Eskander's testimony by substituting what he intended with "its own 'belief.'"[35] UPS sets forth a two-pronged argument: (1) the Board failed to base its factual determination on the actual record; and (2) the Board denied UPS the opportunity to cross-examine Dr. Eskander on the altered record.[36] We address each prong in turn.

> 1. The Board's determination that only one accident occurred was based on the record and supported by substantial evidence

UPS argues that the Board impermissibly altered Dr. Eskander's testimony and then based its factual finding on that altered record. This argument lacks merit. The Board considered the parties' competing theories of the case, exercised its discretion in crediting Dr. Eskander's expert opinion over that of Dr. Rushton, and then noted that it believed the discrepancy in Dr. Eskander's testimony was a misstatement.[37] In doing so, the court properly exercised its discretion in adopting the testimony of one expert over another.[38]

---

[35] Opening Br. 19.

[36] *Id.* at 3.

[37] A16–18 (*Decision* at 11–13).

[38] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009) (holding that an administrative agency "may adopt the opinion testimony of one expert over another; and that opinion, if adopted, will constitute substantial evidence for purposes of appellate review. Similarly, the [agency] may accept or reject an expert's testimony in whole or in part.").

9

Further, the record supports the Board's findings. The Board found that "Dr. Eskander diagnosed Smith with cervicalgia, pain in the thoracic spine, thoracic disc displacement, lumbar weakness, spinal stenosis lumbar, cervical radiculopathy, and disc displacement at C4–C5."[39] It then found that "Dr. Eskander related all of those diagnoses to [Smith's] work accident on February 3, 2022."[40] This finding is supported by substantial evidence, as Dr. Eskander testified to the same at his deposition. Smith's counsel had the following exchange with Dr. Eskander:

Mr. O'Neill:      Okay. What I want to do now is just tie everything together and ask you about -- to confirm the treatment she's had to her neck and back involving physical therapy, injection procedures, chiropractic treatment, medication, obviously surgery and hospital stay, has all been reasonable and necessary and related to her work injury from February of 2022[?]

Dr. Eskander:    Yes, sir, that's correct.

Mr. O'Neill:      And why is that your opinion?

Dr. Eskander:    Well, you know, if you look at the history, prior records, and all the data, there's really no other narrative that supports that this could come from anything but a work injury. She's had legitimate treatment from multiple providers, diagnostic testing, injections, and ultimately surgery where she did get some benefit. So all in all, I do believe it makes the most sense. I don't know of another

---

[39] A12 (*Decision* at 7); *see also* A114 (Eskander Dep. 22:17–23).

[40] A12(*Decision* at 7).

10

compelling story that would -- that would characterize everything as cleanly as this.[41]

The Board relied on this exchange in the Decision.[42] The Board also relied on the next exchange:

Mr. O'Neill: Dr. Rushton has characterized the neck and back as a strain and sprain. Do you agree or disagree with that?

Dr. Eskander: Well, I disagree obviously. You know, we would never do a surgery on a strain and sprain. It's not effective, it's not ethical. Strains and sprains by definition resolve in six to eight weeks. They're not coupled with neurological injuries, meaning radiating pain down the arm or legs or weakness down the arm or legs. So that diagnosis of strain and sprain is completely inadequate. She may have had a strain and sprain initially as part of the injury pattern, but it's not the only thing that she sustained. So, you know, definitely have some issues with his overall assessment.[43]

The Board also was entitled to corroborate Dr. Eskander's conclusion by relying on Smith's testimony that she did not fall on February 3, 2023.[44] Last, the record indicates that the Board considered the alternative narrative proffered by UPS but

---

[41] A125–26 (Eskander Dep. 33:9–34:8).

[42] *Decision* at 14.

[43] A129–30 (Eskander Dep. 37:14–38:7).

[44] *Decision* at 13. UPS also contends that, absent Dr. Eskander's expert opinion as altered by the Board, Smith is left with no expert testimony to prove that her surgeries were necessitated by the February 2022 accident. Opening Br. 27–28. This is incorrect. Aside from Dr. Eskander's one statement that the Board believed to be a misstatement, his testimony contained other statements that supported Smith's position.

rejected it.[45]  In sum, the Board's finding on the date of the accident was thorough and supported by substantial evidence in the record.

      2. <u>UPS had the opportunity to cross-examine Dr. Eskander on the inconsistencies in his testimony during his deposition</u>

UPS argues that the Board deprived it of the right to cross-examine Dr. Eskander on the purportedly altered testimony.  This argument also lacks merit.  Dr. Eskander made contradictory statements regarding Smith's medical history during his deposition.[46]  UPS was represented by counsel at the deposition and had an opportunity to question Dr. Eskander about the inconsistencies in his testimony.[47]  UPS chose not to do so.  Thus, UPS cannot claim that it has never been "permitted to cross-examine Dr. Eskander on testimony that he never actually gave[.]"[48]

---

[45] *Id.* at 11 ("[UPS] argue[d] that the back injuries [Smith] sustained on February 3, 2022 were sprain and strain injuries, neither of which required surgical intervention.  [UPS] also argue[d] that [Smith] sustained a subsequent injury on February 3, 2023, exactly one year after her work accident, and that her two back surgeries may be related to the alleged February 3, 2023 accident.").

[46] A113, A114 (Eskander Dep. 21:15, 22:10).

[47] A94 (Eskander Dep., cover page).

[48] Opening Br. 23.

*B. The IAB Acted within Its Authority in Issuing the Order*

We next address whether the Board erred in reversing its own determination that Smith remained totally disabled after December 2023. We conclude that the Board correctly applied the law when it addressed its own legal error. A "public body exercising judicial functions inherently has the power, even without statutory authority, to reopen and reconsider a decision until it loses jurisdiction."[49] We have stated that the "need for an opportunity for correction of errors, change of mind, or obtaining more adequate factual grounds for a decision is no less present in the case of a decision of the [agency],"[50] and the "mere filing of [an agency's] decision confers nothing in the nature of a 'vested right.'"[51]

Here, the Board initially credited Dr. Rushton's testimony over that of Dr. Eskander's and found that Smith's total-disability status ended in December 2023. But after review of Smith's motion for clarification, the Board admitted that it had committed legal error in failing to follow the rule set forth in *Gilliard-Belfast v. Wendy's, Inc.*[52]

---

[49] *Henry v. Dep't of Lab.*, 293 A.2d 578, 581 (Del. Super. 1972).

[50] *Id.*

[51] *Id.* (quoting *Lyons v. Del. Liquor Comm'n*, 58 A.2d 889, 895 (Del. Gen. Sess. 1948)).

[52] 754 A.2d 251, 254 (Del. 2000).

13

In *Gilliard-Belfast*, claimant Lolita Gilliard-Belfast was employed as a cook and cashier for a restaurant, Wendy's Inc.[53] Gilliard-Belfast sustained an injury to her knee while working at the restaurant and underwent two surgeries.[54] Following her first surgery, Gilliard-Belfast waited for her insurance carrier to approve her medical expenses before she proceeded with the second surgery.[55] Her treating physician instructed her not to engage in any work during this waiting period.[56] Yet the restaurant's expert witness opined that Gilliard-Belfast was not totally disabled in the interval between the two surgeries because she could perform some sedentary tasks.[57] The IAB adopted Wendy's theory and found Gilliard-Belfast not totally disabled while she awaited her second surgery.[58] The Superior Court affirmed the IAB's judgment, and Gilliard-Belfast appealed to this Court.[59] This Court noted that the

> precedential effect of the Board's decision would place injured workers in a completely untenable position. If a treating physician's order not to work is followed, the claimant risks the loss of disability compensation if the Board subsequently determines that the claimant could have performed some work. Conversely, if the treating physician's order not to work is disregarded, a claimant who returns to

---

[53] *Gilliard-Belfast*, 754 A.2d at 251.

[54] *Id.* at 252.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 252–53.

[58] *Id.* at 253.

[59] *Id.*

14

work not only incurs the risk of further physical injury but also faces the prospect of being denied compensation for that enhanced injury.[60]

We reversed the IAB's decision and held that "a person who can only resume some form of employment by disobeying the orders of his or her treating physician is totally disabled, at least temporarily, regardless of his or her capabilities."[61] In other words, if a claimant's treating physician has instructed her not to return to work, a change in her physical condition does not modify her disability status.

In this case, following *Gilliard-Belfast*, the Board acknowledged that given Dr. Eskander's instructions—that Smith should not return to work during her recovery—Smith should be deemed totally disabled after December 2023.[62] The Board "inherently has the power to reopen and reconsider its decisions."[63] Thus, UPS had no "vested right" in the Board's earlier, erroneous conclusion.[64]

Still, UPS challenges the issuance of the Order on the basis that the Board interpreted this Court's decision in *Gilliard-Belfast* too broadly. In UPS's view, *Gilliard-Belfast* was narrowed by *Delhaize America, Inc. v. Baker*.[65] In *Delhaize*, the employee, Baker, was injured while working at a supermarket owned by her

---

[60] *Id.*

[61] *Id.* at 254.

[62] *Order* at 3–4.

[63] *Henry*, 293 A.2d at 581.

[64] *Id.*

[65] Opening Br. 30.

15

employer, Delhaize. The IAB applied the *Gilliard-Belfast* rule and determined that Baker should be deemed totally disabled for the duration of time that her doctor prohibited her from working. The *Delhaize* Court explained that

> if a claimant is instructed by his treating physician that he or she is not to perform any work, the claimant will be deemed to be totally disabled during the period of the doctor's order. This rule assumes that the doctor acts in good faith, and *does not extend beyond the time* that the Board decides whether the claimant is disabled as a matter of fact.[66]

Despite the *Delhaize* Court's holding that Baker should be deemed disabled consistent with *her doctor's* instruction, UPS asks us to read the above-quoted language to mean that a claimant is no longer totally disabled once *the Board* decides so. UPS argues that the Decision determined that Smith was no longer totally disabled as of December 2023 and therefore, the Board erred in subsequently extending the *Gilliard-Belfast* rule "beyond the time" of the Decision.[67] We decline to adopt UPS's interpretation.

This Court has interpreted *Delhaize* as strengthening, instead of narrowing, the *Gilliard-Belfast* rule. We have emphasized that *Delhaize* requires that the *Gilliard-Belfast* rule apply to all workers' compensation claims, "whether the parties agree that the claimant is disabled or not."[68] Furthermore, our decision in *Delhaize*

---

[66] *Delhaize Am., Inc. v. Baker*, 880 A.2d 1047, 2005 WL 2219227, at *1 (Del. 2005) (TABLE) (emphasis added).

[67] *Id.*; Opening Br. 31.

[68] *Smith v. James Thompson & Co.*, 918 A.2d 1164, 1167 (Del. 2007) (citing *Delhaize*, 880 A.2d at 1047).

16

should not be interpreted as prohibiting the correction of an administrative agency's erroneous holding. An administrative agency, like the IAB, should be afforded "the opportunity to correct its own errors."[69] We therefore hold that the Board did not err in correcting its legal error through the Order.

## CONCLUSION

For the reasons set forth above, we hold that the Industrial Accident Board's Decision and Order are supported by substantial evidence and are free from legal error. The judgment of the Superior Court is affirmed.

---

[69] *Moynihan v. City of Seaford*, 2006 WL 2389333, at *4 (Del. Ch. Aug. 7, 2006).