Gary J. CICCHINI and Kurt
Einbrod, Plaintiffs,

v.

STATE of Delaware and Delaware
State Police, Defendants.

Civ. A. No. 92C–08–027.

Superior Court of Delaware,
New Castle County.

Submitted: March 12, 1993.
Decided: July 12, 1993.

Susan D. Ament and Barbara J. Gadbois, of Ament, Lynch & Carr, Wilmington, for plaintiffs.

B. Wilson Redfearn and Bernadette M. Plaza, of Tybout, Redfearn & Pell, Wilmington, for defendants.

## OPINION AND ORDER

TOLIVER, Judge.

### NATURE AND STAGE OF PROCEEDINGS

On August 6, 1992, Mr. Gary J. Cicchini and Mr. Kurt Einbrod, members of the Delaware State Police ("the Plaintiffs"), instituted this action against the State of Delaware and the Delaware State Police ("the Defendants"). In their original complaint, the Plaintiffs sought compensatory and punitive damages for the Defendants' failure to process their accident claims first through the personal injury protection insurance coverage (hereinafter "PIP")[1] mandated by 21 Del.C. § 2118 rather than through the workmen's compensation insurance coverage provided pursuant to 19 Del.C. §§ 2304, 2306 and 2372. On November 19, 1992, the Plaintiffs filed a motion for summary judgment and requested an order requiring the Defendants to compensate the Plaintiffs under the Defendants' PIP insurance coverage and reimburse the workmen's compensation program for benefits already paid pursuant to that policy.

On January 29, 1993, the Plaintiffs amended their complaint by stipulation. In addition to the aforementioned request for relief, the Plaintiffs prayed in the alternative for the entry of a judgment in their favor declaring that the Defendants are obligated to pay all benefits due them pursuant to 21 Del.C. § 2118 as well as reimburse their workmen's compensation insurance fund for all benefits paid to or on behalf of the Plaintiffs. In their opening brief filed on February 1, 1993 the Plaintiffs redefined the relief sought as follows:

---

1. For present purposes, the terms "PIP" and "no fault" coverages shall be deemed synonymous, and will hereinafter be used interchangeably.

Plaintiffs hereby limit their request for relief to a Declaratory Judgment on the limited issue of whether Defendants are required to pay all of Plaintiffs medical expenses and lost wages under Defendants' no-fault self-insurance program rather than under Defendants' workers' compensation self-insurance program based on a legal finding that no-fault coverage is primary over workers' compensation coverage.

Plaintiffs' Opening Brief at 2.[2] It is this issue that the Court will now address.

### FACTS

Plaintiffs Cicchini and Einbrod have been employed by the Delaware State Police for the past nine years. Both Plaintiffs sustained personal injuries as a result of two separate automobile accidents. Plaintiff Cicchini's accident occurred on September 13, 1990. The accident involving Plaintiff Einbrod occurred on December 21, 1990. It is undisputed that at the time of both accidents, the Plaintiffs were said to have been acting within the scope of their employment and were operating vehicles owned by the Defendants.

At all times relevant to this action, the State was self-insured as to both PIP insurance and workmen's compensation insurance. On or about September 13, 1990, Plaintiff Cicchini filed a workmen's compensation claim for lost wages and medical expenses. Subsequently he learned that the coverage afforded by the tortfeasor's insurance policy was limited to $15,000.00, and advised the Defendants that he intended to file a claim for underinsured motorist benefits under a separate policy maintained by the State with a limit of $25,000.00.[3] To date, a total of $1,550.04 in lost wages and $21,687.35 in medical expenses have been paid on this claim.

On or about December 24, 1990, Plaintiff Einbrod also filed a workmen's compensation claim, and has received $5,158.96 for lost wages and $10,466.25 for medical expenses.

He has also received PIP benefits in the amount of $2,829.01 for a portion of his overtime pay which was not covered by the workmen's compensation policy. On November 2, 1992, Plaintiff Einbrod and his wife instituted a civil action against the third party tortfeasor for general and special damages incurred as a result of the December 1990 accident. This third party tortfeasor is insured in the amount of $500,000.00.

### DISCUSSION

Upon a motion for summary judgment, the Court must view the facts and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party. Superior Court Civil Rule 56(c). Summary judgment is proper only when the Court finds that there are no genuine issues of material fact. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979). Summary judgment will not be granted when the record "indicates that a material fact is in dispute, or, if it seems desirable, to inquire more thoroughly into the facts in order to clarify the application of the law." *Wilson v. Dover Skating Center,* Del.Super., 566 A.2d 1020 (1989).

The issue raised by the Plaintiffs' motion for summary judgment is whether the primary obligation to provide compensation for injuries received as a result of an automobile accident occurring in the course and scope of employment lies with the Defendants' PIP insurance coverage fund or its workers' compensation insurance coverage. Upon review of the authorities, the Court finds that the answer is in the affirmative. Stated differently, the PIP coverage is primary and the Defendants are obligated to pay the Plaintiffs' medical expenses and lost wages pursuant to that coverage.

The Workmen's Compensation Act, 19 *Del.C.* §§ 2301–2397, requires all employers in this State, unless excluded, to maintain insurance providing medical and lost wage benefits to their employees injured in the scope of their employment. The twin purposes of this Act are to provide a scheme for

---

**2.** On March 12, 1993, briefing on the motion was completed.

**3.** The third party's insurer has paid the $15,-000.00 to Plaintiff Cicchini and the funds are now in an escrow account pending the outcome of this litigation.

assured compensation for work-related injuries and to relieve employers and employees of the expenses and uncertainties of civil litigation. *Kofron v. Amoco Chems. Corp.,* Del.Supr., 441 A.2d 226 (1982).

The PIP statute, 21 *Del.C.* § 2118, is entitled to liberal construction in order to achieve it purpose. *DeVincentis v. Maryland Casualty Co.,* Del.Super., 325 A.2d 610 (1974). The purpose of § 2118 is to provide basic insurance coverage for all personal injuries arising out of automobile accidents without regard to culpability. The statute is said to "promote expedient payment of medical expenses, lost earning and property damage without regard to fault." *Id.* Unlike the Workmen's Compensation Act, payments issued pursuant to § 2118 are not limited to accidents occurring in the scope of employment.

The central issue herein has been discussed tangentially in several cases cited by the parties. First, in *Home Insurance Co. v. Walls,* Del.Super, C.A. No. 77C–OC–90, Taylor, J. (October 19, 1979), the Court held that the legislative intent was to give superiority to no-fault benefits over workmen's compensation benefits where the former provided greater benefits. Then, in *Johnson v. Firemen's Fund Insurance Co.,* Del.Super., C.A. No. 82C–OC–63, Poppiti, J. (November 21, 1983), the Court reached a similar conclusion by deciding that it is the "good faith obligation" of the PIP insurer to process the claim so as to maximize the benefits recoverable by the claimant. However, *Walls* involved an attempt by a insurer who paid workmen's compensation to an individual to obtain reimbursement out of the proceeds received by that individual in settlement of his claim against the tortfeasor. In *Johnson,* the question was whether the injured party was entitled to PIP benefits in excess of policy limits when those limits would not have been exhausted if workmen's compensation benefits had been sought.

More recently, and closer to the instant issue, is *Pennsylvania Manufacturers Association Co. v. Oliphant,* Del.Super., C.A. No. 83C–AP–3, Bush, J. (September 10, 1986). There the Court opined that the statute does not "establish which insurer, no-fault or

workmen's compensation, must initially pay benefits in an automobile accident case involving an employee injured during the course of his employment." It also found that the claimant had a right to payment of the PIP benefits in lieu of the worker's compensation. *Oliphant, supra* at 6. The Court primarily relied upon the fact that the no-fault statute was "more recently enacted and is more specific, applying to all PIP insureds, whether employees or not, who are injured in an automobile accident." *Id.* at 5 (citations omitted).

The most relevant pronouncements in this regard however, may be found in *Lane v. The Home Insurance Co.,* Del.Super., C.A. No. 85C–SE–34, Martin, J. 1988 WL 40013 (April 14, 1988). In *Lane,* the employee was a salesman who had been injured while riding with a prospective customer in a car he was trying to get the latter to purchase. The employee received $12,059.52 as compensation for his medical expenses and lost wages under the Workmen's Compensation Act from the Home Insurance Co., his employer's workmen's compensation carrier. He also received that portion of his wages which were not compensable under the Workmen's Compensation Act, and an additional $25,000.00 pursuant to uninsured motorist provisions of the employer's PIP policy. Home provided the PIP insurance as well. The relevant controversy arose when Home attempted to assert a lien in the amount of the workmen's compensation benefits paid against the uninsured motorist payment. It was defined by the Court as follows:

> The parties agree that the plaintiff was entitled to receive benefits from Home for his medical expenses and loss of wages arising out of the collision-related injuries, but disagree as to whether those benefits were payable by Home as primary coverage under the no-fault statute or by Home as primary coverage under the workmen's compensation act.

> Since the employee was injured during the course of his employment while an occupant of a vehicle, the initial issue before the Court is whether the payment of workmen's compensation benefits is primary

over the payment of personal injury protection benefits from the employer's no-fault insurer.

*Id.* at 3.

After reviewing *Johnson, supra; Oliphant, supra; Walls, supra;* and *Catalonga v. Skinner,* Del.Super., C.A. No. 1444, 1976, Bifferato, J. (June 26, 1978); Judge Martin stated:

> In light of the preceding case law, this Court finds the priority of responsibility falls upon the no-fault insurer and even if the workmen's compensation benefits are available to an insured, the insureds [sic] PIP benefits under an automobile liability policy are still primary. This conclusion is supported by the sound policy considerations which promote the expeditious payment of medical expenses with later determination of primary liability in a manner not dependent upon the circumstance of which insurer happened to be first asked for payment.

(Citations omitted) *Id.* at 5. The Court then went on to hold that Home, as the workmen's compensation carrier, was entitled to reimbursement of the monies so paid and therefore a lien in that amount.

*Home* and the other cases referred to clearly stand for the proposition that not only is PIP coverage primary, but its interaction with the coverage provided under the Workmen's Compensation Act must be managed in such a fashion that the injured employee receives the maximum benefits available under both. The object is to provide for and protect the interests of such individuals. It is not to penalize them by reducing the compensation to which they have otherwise been determined entitled.

In this case, had the claims been processed under the PIP policy, as Plaintiffs advocate, the PIP carrier would be able to recoup all monies paid to the Plaintiffs by exercising its subrogation rights against the tortfeasor to the extent available after paying any claims by the Plaintiffs. If the tortfeasor had no insurance, or if it had been exhausted, the PIP carrier could seek indemnification from the workmen's compensation carrier, who would then be able to look to the Plaintiffs and any recovery they might have received from, or on behalf of, the tortfeasor. By doing so, the Plaintiffs could maximize their benefits because the subrogation schemes [4] read together in said fashion, impose the burden of paying for the harm caused upon the one who brought about the harm in the first instance, i.e., the tortfeasor, and quite possibly reduce or eliminate any lien an innocent party might have to pay.[5]

---

4. The subrogation provisions as set forth in the Workmen's Compensation Act and the PIP statute are found respectively at: 19 *Del.C.* § 2363(e) and 21 *Del.C.* § 2118(g).

5. Indeed, the scenarios set forth in the Plaintiffs' brief illustrate this point most clearly:

> In cases where the no-fault carrier refuses payment of the special damages and instead the workers' compensation carrier pays the special damages, the resulting prejudice to plaintiff is quite clear from the following examples. If the tortfeasor's liability limits are $100,000 and the plaintiff's claim is resolved for $75,000, there remains $25,000 available to reimburse the no-fault carrier. If the no-fault carrier paid benefits in excess of $25,000, say $40,000, then the liability carrier would pay the no-fault carrier $25,000, the remains of its limits after plaintiff's claim was resolved, and the workers' compensation carrier would reimburse the no-fault carrier for the remaining $15,000. The workers' compensation carrier would then have a lien for $15,000 against the $75,000 recovered by the plaintiff from the defendant's liability carrier such that the plain-

tiff would net $60,000 after payment of the lien.

. . . . . .

Returning to the example where plaintiff was injured in an automobile accident, let us say that the special damages were not $40,000 but only $25,000 and plaintiff's general damages remained $75,000. In that case, the no-fault carrier, after paying the $25,000 in special damages sustained by plaintiff, would then have a claim against the liability carrier for the $25,000. Since the liability carrier would still have $25,000 of liability limits left, the liability carrier would be able to reimburse the no-fault carrier in full and the workers' compensation carrier would not be required to pay anything. Likewise, there would be no lien against plaintiff's $75,000 recovery for his general damages.

However, if the no-fault carrier refused to pay the special damages and instead the workers' compensation carrier paid the $25,000 in special damages, the plaintiff would have to pay the entire $25,000 workers' compensation lien out of his $75,000 recovery for his general damages. The plaintiff would then be left with only $50,000 after repaying the workers' compensation lien.

The Defendants argue that "no-fault benefits have never been 'primary' as to workmen's compensation coverage."[6] Furthermore, while conceding that under Delaware law benefits should be paid in such a way so as to maximize coverage, the Defendants maintain that in the case at bar the employee Plaintiffs are "benefitted" by the overall scheme. In the first instance, the workmen's compensation statute allows for the recovery of benefits not limited by the two-year PIP recovery period. Secondly, in the event the PIP payment for lost wages is greater than the workmen's compensation payment, the Defendants will pay the difference. And finally, the Plaintiffs, while receiving workmen's compensation benefits, are entitled to further supplemental benefits during the first three months, in accord with 29 *Del.C.* § 5933[7].

The Court agrees that the Plaintiffs would indeed be "benefitted" and not disadvantaged under the coverage scheme outlined by the Defendants. Nor does the Court dispute the proposition that Delaware law does not require the PIP insurer to pay first in all instances even where PIP coverage is termed "primary" or "superior." *See Oliphant, supra* at 4. However, and simply put, the Defendants are not able to contradict the argument that by declaring the workmen's

compensation benefits primary, the Plaintiffs will actually recover less because the resultant liens would be satisfied directly from any recovery received by the Plaintiffs from the tortfeasors involved in their respective cases. This is true notwithstanding the existence of benefits from sources unrelated to either statutory scheme. Given that fact, and in light of the existing law, this Court has little choice but to accept the Plaintiffs' construction of the relevant statutes.

### CONCLUSION

In light of the foregoing, this Court declares as a matter of law that the Plaintiffs are entitled to primary coverage for the injuries received under the provisions of the Personal Injury Protection or No Fault statute, 18 *Del.C.* § 2118, as opposed to the Workmen's Compensation Act, 19 *Del.C.* §§ 2301–2397, and summarily enters judgment to that effect.

**IT IS SO ORDERED.**

---

Plaintiffs' Opening Brief at 10–12.

**6.** This is obviously incorrect in light of the pronouncements made in *Lane, supra* and *Oliphant, supra.*

**7.** In a letter dated October 15, 1990, the State, through its Insurance Coverage Officer, advised the Plaintiffs:

> In the event we pay out under PIP and no claim is made under workers compensation, your client would lose the salary continuation provided for the ninety day period following an

accident. Also, under a leave of absence without pay they would lose benefits such as pension time accrual, plus vacation and sick leave accrual. They also could lose the State's portion of their health insurance premium.

The Defendants have not raised these potential disadvantages in their brief nor have the Plaintiffs addressed them in their legal memoranda. The Court will simply assume that Plaintiffs have considered the findings of the Insurance Coverage Officer at this point in the litigation.