# IN THE SUPERIOR COURT OF DELAWARE

THOMAS MACLARY,                          )
                                         )
   Claimant-Below / Appellant,           )
                                         )    C.A. No. N24A-07-002 DJB
                v.                     )
                                         )
JAMES MALIN PLUMBING,                     )
   Employer-Below / Appellee.            )

Submitted: May 27, 2025
Decided:  August 25, 2025

## <u>MEMORANDUM OPINION</u>

**On Cross-Appeals from The Industrial Accident Board –**
*AFFIRMED IN PART, REMANDED IN PART*

*David C. Malatesta, Esquire*, Shelsby & Leoni, Wilmington, Delaware, attorney for Claimant-Below/Appellant

*Nicholas E. Bittner, Esquire,* Heckler & Frabizzio, Wilmington, Delaware, attorney for Employer-Below/Appellee

**BRENNAN, J.**

1

This cross appeal challenges the Industrial Accident Board's (hereinafter "the Board") decision finding many of Plaintiff Thomas Maclary's (hereinafter "Claimant") injuries sustained in a work-related collision were not compensable. Specifically, Claimant contends the Board's finding related to the left elbow, lumbar spine, and concussion were not supported by substantial evidence.[1] Appellant, the employer's workers' compensation carrier, filed a cross-appeal arguing the Board's decision was not supported by substantial evidence, given its Board rejection of portions of an Employer's expert testimony. The workers' compensation carrier also contests the Board's finding of total disability.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Claimant was employed as a plumbing service technician with James Malin Plumbing (hereinafter "Employer") when he sustained injuries in a head-on collision with another truck on September 9, 2021.[2] The crash was tentatively accepted as compensable and Employer's workers' compensation carrier (hereinafter "carrier") began paying total disability benefits and medical expenses related to injuries Claimant sustained to his right foot.[3] No formal agreement outlining compensation was ever executed.[4]

---

[1] *Thomas Maclary v. James Malin Plumbing;* N24A-04-007-002 DJB, Superior Court Civil Docket Item ("D.I.") 1.
[2] Claimant's Opening Brief, D.I. 14, p. 3.
[3] *Id.*
[4] *Id.*

2

Over the next three years Claimant received extensive treatment for his right foot injury and other conditions developed following the collision. Treatment of Claimant's right foot began at Christiana Care Emergency Department on the day of the crash. Claimant's big toe joint was dislocated, and he sustained a fractured second metatarsal. Claimant did not report any headaches, numbness, weakness, or chest pain at this initial medical visit.[5]

On September 13, 2021, Claimant went to First State Orthopaedics to address what Claimant described as mild right foot pain.[6] Later that month, on the 27th of September, 2021, Claimant returned and was diagnosed with a contusion of the right knee.[7]

Claimant then treated with a chiropractor in November, 2021, at Pain and Rehab Center, for headaches, chest pain, neck pain, mid back pain, low back pain, right hip pain, right knee pain, right ankle pain, right foot paint, and bilateral lower extremity pain.[8] MRIs were performed as a result, which showed primarily degenerative changes to the neck, lumbar, and right shoulder.[9] Also, in November, 2021, Claimant began treatment with Dr. Patil at Delaware Neurology Group, where he described himself as dazed from the accident; the neurological examination

---

[5]Appellant's Answering Brief, D.I. 16, Ex. F, Dr. Piccioni's Direct Examination.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

3

appeared normal.[10]  The next day, Claimant was seen at Delaware Orthopaedic Specialists (hereinafter "DOS") where he reported pain in his right toe, hip, knee, and left ankle.  Despite his pain levels, Claimant's only diagnosis was with respect to the injuries to his right foot.  All other complaints were deemed superficial.[11]

On January 18, 2022, Claimant returned to DOS for a follow up on his right foot injury.  Claimant was instructed to schedule a follow-up appointment in six weeks to discuss returning to full-duty work.[12]  On January 26, 2022, Claimant again visited DOS complaining of right shoulder pain and weakness.  While the exam revealed some tenderness, he was cleared to return to light-duty work.[13]

Claimant did not seek further medical attention until the summer of 2022.  On July 14, 2022, Claimant first reported spinal issues to Dr. Eskander at DOS. As a result of this complaint, Claimant underwent an additional spinal MRI which did not reveal anything new.[14]  On August 19, 2022, a CT of Claimant's chest appeared normal despite Claimant's complaints.[15]  Claimant saw Dr. Eskander on August 25, 2022, described feeling worse, and identified pain in his left elbow for the first

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] D.I. 16, p. 7.
[14] D.I. 16, p. 7-8.
[15] D.I. 16, p. 8.

time.[16] On September 8, 2022, Claimant had a follow up appointment for his right foot and Dr. Ward found he had reached maximum medical improvement.[17]

February 8, 2024, Claimant continued to report high pain levels in his neck, mid and low back, arms and legs, right shoulder, and left elbow. Claimant was later diagnosed with a lateral epicondylitis in the left elbow and received a numbing injection in his right shoulder.[18] On March 2, 2023, Claimant underwent an arthroscopic surgery.[19] Later that month, on March 30, 2023, Claimant received a lumbar spine numbing injection.[20] On June 7, 2023, Claimant received another injection, this time to his left elbow.[21] On September 7, 2023, Claimant underwent a third set of MRIs, which revealed no differences.[22]

Claimant's final appointment with Dr. Eskander occurred on November 1, 2023, where he reported a 6/10 pain level.[23] Despite his continued pain, he was cleared to work sedentary duty on August 8, 2023.[24] Claimant continued treatment for his neurological symptoms of dizziness, headaches, pain around the eyes, restricted field of view, memory loss, flashes of light, loss of balance, and restricted

---

[16] *Id.*
[17] *Id.* at 9.
[18] *Id.*
[19] *Id.* at 10.
[20] *Id.*
[21] *Id.* at 11.
[22] *Id.* at 10.
[23] *Id.*
[24] *Id.* at 11.

motion, in the Spring of 2023.[25]   On December 13, 2023, Dr. Bennett identified ongoing headaches but no other significant neurological issues.[26]

The carrier's doctor, Dr. Piccioni, examined Claimant on January 5, 2024, and found no objective evidence of injury during his physical examination.[27]  Dr. Patil, however, issued Claimant a note on January 10, 2024, keeping him out of work until June 21, 2024.[28]

As his treatments continued, Claimant, after receiving total disability from his employer, opted to terminate his benefits and instead receive all his payments through the Personal Injury Protection (hereinafter "PIP") carrier.[29]  The PIP carrier coincidentally happened to be the same carrier distributing the workers' compensation benefits.[30]

On September 5, 2023, when Claimant's PIP benefits were about to exhaust, he filed a Petition to Determine Compensation Due as to his PIP benefits with the Board.[31]  He requested acknowledgment of injuries to his right foot, left hip, right knee, left knee, cervical spine, thoracic spine, lumbar spine, right shoulder, left

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at 12.
[28]*Id.*
[29] *Id.* at 14, 16.
[30] *Id.*
[31] *Id.*

elbow, and head.[32] The parties requested the Board determine what body parts or injuries were causally related to Claimant's work accident and to analyze the nature and extent of those injuries.[33] The Board was not initially asked to consider whether an injury had resolved but did so in its opinion.[34]

At a hearing on April 8, 2024, the Board heard testimony from five different doctors, as well as Claimant himself. Claimant's doctors testified that the injuries to the head, spine, right shoulder, and left elbow were all causally related to the collision.[35] One doctor testified that Claimant suffered a concussion in the collision and later developed post-concussive syndrome and instructed Claimant not to work as a result of his injuries.[36]

Employer submitted conflicting testimony through Dr. Piccioni, who challenged the causal link between all of Claimant's injuries other than the right foot injury, to the crash. Dr. Piccioni believes only the right foot is compensable because that was the only injury reported in the emergency room on the date of the crash.[37] Dr. Piccioni opined that any injury not reported within three days of the crash could not be related. Regarding Claimant's concussion, Employer's evidence noted a 2021

---

[32] *Id.* at 13.

[33] *See* D.I. 14.

[34] *Id.* at Ex. G. The parties stipulated the questions for the Board to determine that did not include whether an injury had resolved.

[35] *See* D.I. 16, Ex. B, C, and D, respectively.

[36] D.I. 16, p. 14.

[37] *Id.* at Ex. G, F.

record, prior to the crash, where Claimant reported headaches every other day for months, and another record in 2022 where no issue with Claimant's eyes or neurological function was present. Dr. Piccioni interpreted that testimony to suggest any concussion Claimant suffered has resolved.[38]

The Board issued its written decision on June 21, 2024.[39] Like the parties, the Board agreed Claimant dislocated his right big toe and fractured his right metatarsal in the crash. The Board found for Claimant in that his right foot injury has not yet resolved.[40] As to Claimant's other injuries, specifically to his right shoulder, cervical spine, head, right knee, left knee, left elbow, left hip, thoracic spine, and lumbar spine, the Board found these were not as clearly related to the collision. The Board broadly disagreed with Dr. Piccioni's blanket statement that "[i]t is well-known that injuries can develop over 48 to 72 hours, with pain, stiffness, those kinds of things. So this is now four days into the injury. This is—as I've always testified, this is when all injuries should be in, they should be accounted for."[41]

---

[38] Dr. Piccioni also noted discrepancies in the examinations, one being "Dr. Andrisani – an orthopaedic surgeon – documenting negative impingement to the right shoulder in early 2022, while Dr. Crain later performed surgery for impingement that was allegedly there the entire time." D.I. 16, Ex. F.

[39] *See* Decision on Petition to Determine Compensation Due, D.I. 16, Ex. G. The Board decided the issue of attorneys' fees and medical witness fees, but only the decisions related to compensability and total disability are relevant on appeal.

[40] *Id.*

[41] *Id*.

In rejecting Dr. Piccioni's line of reasoning, the Board accepted Claimant's position that the neck and cervical spine pain are causally related to the crash and remain unresolved.[42] The Board determined Claimant's knee injuries and subsequent treatment, despite being not as factually well-developed as many of his other complaints, were related to the work accident; the treatment was also deemed reasonable and necessary.[43] While the Board found injuries to Claimant's right shoulder were causally related to the work accident, it found no further treatment necessary because that injury had resolved. Similarly, it found that Claimant's concussion and post-concussive condition were related to the accident but has reached maximum medical improvement. The Board did not find the injuries to Claimant's left elbow, left hip, lumbar spine, or thoracic spine casually related to the work accident.[44] Finally, the Board decided Claimant remained totally disabled following the exhaustion of his PIP benefits on September 10, 2023.[45]

On July 23, 2024, Claimant filed a limited appeal alleging the decisions related to his lumbar spine injury, current concussion symptoms, and left elbow

---

[42] D.I. 16, Ex. G, p. 28. "On more than one occasion, when Dr. Eskander examined Claimant, he noted objective and subjective bases to confirm his diagnosis of cervical pain with radiculopathy. Dr. Eskander causally related that diagnosis to Claimant's September 9, 2021, work accident."

[43] *Id.*

[44] *Id.*

[45] D.I. 14, Ex. A, p. 31.

injury were not based on substantial evidence.[46]  The Opening Brief was filed on November 6, 2024.[47]  Employer filed "Answering Brief on Appeal and Cross-Appellant's Opening Brief on Cross-Appeal" on November 25, 2024.[48]  The cross-appeal focused on the Board's decisions regarding Claimant's neck, shoulder, and right foot.  Employer additionally challenges the Board's finding that Claimant remained totally disabled upon the exhaustion of his PIP benefits.[49]  Claimant filed a timely Reply to Employer's cross-appeal on December 23, 2024.[50]  Employer replied to Claimant on January 8, 2025.[51]  Both parties were heard at oral argument on May 27, 2025.[52]  This is the Court's Opinion.

## II.    STANDARD OF REVIEW

Legal issues decided by the Board are reviewed *de novo*.[53]  When reviewing factual decisions of the Board, the Court shall determine whether the agency's decision "was supported by substantial evidence on the record before the agency."[54]  Substantial evidence is "such relevant evidence as a reasonable mind might accept

---

[46] D.I. 1.  Employer also filed a notice of cross-appeal on July 24, 2024.
[47] D.I. 14.
[48] D.I. 16.
[49] D.I. 2.
[50] D.I. 19.
[51] D.I. 20.
[52] D.I. 24 and 25.  Due to various scheduling issues, oral argument was ultimately rescheduled to this date.
[53] 29 *Del. C.* §10142(c).
[54] *Id*. at §10142(d).

as adequate to support a conclusion."[55]  It is "more than a scintilla but less than a preponderance of the evidence."[56]  The Board's findings of fact are given great deference.[57]  "Only when there is no satisfactory proof to support a factual finding of the Board may the Superior Court [] overturn that finding."[58]  The Court must "consider the law and decide whether the board properly applied the facts as it found them to be."[59]

"[T]he Superior Court may only overturn a factual finding of the Board when there is no satisfactory proof in favor of such a determination."[60]  "Even if expert testimony shows nothing more than a 'mere possibility,' the Board's award may be upheld as long as it is supported by 'other credible evidence.'"[61]  The Board "has expressly been entrusted with the power to find the facts," therefore "its fact finding must be affirmed if supported by any evidence, even if the reviewing court thinks the evidence points the other way."[62]

---

[55] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009) (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[56] *Powell v. OTAC, Inc.*, 223 A.3d 864, 871 (Del. 2019) (quoting *Noel-Lizkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013)).

[57] *Greenville Country Club v. Greenville Country Club*, 150 A.3d 1194, 1199 (Del. 2016) (quoting *Whitney v. Bearing Const., Inc.* 93 A.3d 655 (Table) (Del. 2014)).

[58] *La-Z-Boy*, 68 A.3d at 191.

[59] *One River Place, LLC v. New Castle County Dept. of Finance*, 2007 WL 1296870, at *1 (Del. Super. Apr. 27, 2007).

[60] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1259 (citing *Steppi v. Conti Elec., Inc.*, 2010 WL 718012 (Mar. 16, 2020)).

[61] *Wesley v. State*, 2021 WL 3783634, at *5 (Del. Super. Aug. 31, 2021).

[62] *Wyatt*, 81 A.3d at 1259 (citing *Steppi*, 2010 WL 718012).

[I]t is within the Board's exclusive domain to weigh the evidence, determine the credibility of witnesses, and resolve any conflicts in the testimony. And even when the Board hears testimony from a claimant's treating physician, "[t]he weight to be given to the expert testimony of a treating physician…is for the Board to determine, as the trier of fact."[63]

## III. ANALYSIS

Claimant and Employer both challenge the Board's evidentiary basis for reaching its decision. Claimant alleges the Board lacked sufficient evidence to exclude the lumbar spine and left elbow injuries from compensation and submits the Board incorrectly determined that his concussion symptoms have resolved. Employer appeals the decision on different grounds. On cross-appeal, Employer argues the Board applied the wrong legal standard on recurrence of total disability, awarded a recurrence and ongoing disability without legal or factual support, and acted arbitrarily and capriciously in finding the neck and right shoulder injuries compensable while denying resolution of the right foot injury.[64]

At argument the parties laid out the issues related to Claimant's right foot, spine (including neck), right shoulder, left elbow, and head.[65] The parties also addressed Claimant's status as totally disabled. In reviewing this matter, the Court considered the parties' respective positions, the Board's written decision, and the

---

[63] *Wesley*, 2021 WL 3783634, at *6 (quoting *Clements v. Diamond State Port Corp.*, 831 A.2d 870, 877 (Del. 2003)).
[64] D.I. 2.
[65] D.I. 25, Hearing Trans., pp. 6-9.

12

entire record in this case. For the reasons detailed below, the Board's decisions with respect to Claimant's ongoing concussive symptoms, left elbow injury, neck, and right shoulder were based upon substantial evidence. However, the Board's basis for its decisions related to the lumbar spine, right foot, and finding of total disability were not so supported.

## LUMBAR SPINE INJURY

Claimant argues the Board's finding that the lumbar spine injury unrelated to the work accident conflicts with its decision to compensate Claimant for the cervical spine injury, on the basis that "there is no discernable difference between the diagnosis and treatment for both the cervical spine and lumbar spine injuries as noted by the Board."[66] The Court agrees. The evidence before the Board was Dr. Eskander's testimony. He told the Board Claimant presented muscle spasms from the cervical to lumbar spine on November 3, 2021, just a few weeks after the crash.[67] When he evaluated Claimant on July 14, 2022, he reviewed MRI findings that showed pathology in Claimant's cervical spine and compression and neural foraminal narrowing in the lumbar spine.[68] Dr. Eskander diagnosed Claimant with

---

[66] D.I. 14.

[67] D.I. 14, Ex. B, pp. 8-10. The same exam revealed a greater than thirty-five percent reduction in range of motion in the cervical and lumbar spine.

[68] D.I. 16, Ex. B, pp. 12-13. At the visit with Dr. Eskander Claimant also reported "back pain that radiates to both legs, buttocks, and straight in the bottoms of both feet."

13

"cervical pain with radiculopathy and lumbar pain with radiculopathy" and ordered an updated cervical and lumbar MRI and continued physical therapy.[69]

Dr. Eskander outlined similar treatment plans for both the cervical and lumbar spinal injuries:

> Q: Okay. And was the purpose of that visit to follow up and discuss with him any updated review of films?
>
> A: …[H]e has reduced sensation in the left C6 and C7 distributions…So the treatment plan at this point was essentially, you know, for the cervical spine, to continue with the therapy, consider an injection, and if that didn't work, we would have a surgery to address the neurological issue. We want – we wanted to continue with the therapy to the lumbar spine...[70]
>
> …
>
> Q: …Mr. Maclary had a steroid injection on February 15th of 2023; is that correct?
>
> A: Yes.
>
> …
>
> Q: …[T]he records indicate a bilateral L4-5 transforaminal steroid injection on March 30th, 2023?
>
> A: Yes.
>
> Q: Again, is that to address injuries that you believe are related to his September 9, 2021 auto accident?
>
> A: Exactly.[71]

---

[69] D.I. 16, Ex. B, pp. 12-13.
[70] Id. at pp. 13-15.
[71] Id. at pp. 17-18.

The Board considered Dr. Eskander's testimony when it compensated Claimant for only the cervical spine injury: "[o]n more than one occasion, when Dr. Eskander examined Claimant, he noted objective and subjective bases to confirm his diagnosis of cervical pain with radiculopathy. Dr. Eskander causally related that diagnosis to Claimant's September 9, 2021, work accident."[72] Despite accepting Dr. Eskander's testimony regarding Claimant's cervical spine, the Board later found the lumbar injury was not causally related to the accident, deciding "Claimant failed to meet his burden of proof on these issues and the Board does not relate them to the work accident on September 9, 2021."[73]

The board's decision is contradictory. Dr. Eskander's testimony, which the Board relied upon in compensating the cervical spine injury, also opined the lumbar injury is related to the accident. The record shows two spinal injuries diagnosed and treated in similar manners and on the same timeline. The Board's decision does not articulate the evidentiary basis for having relied on Dr. Eskander's testimony describing similarly situated spinal injuries to compensate one injury, but yet to not supporting the other. "While the Court 'will not intrude on [the Board's] role as trier of fact by disturbing [the Board's] credibility determinations or factual findings,'" it is the Court's responsibility to ensure the Board's findings are "supported by

---

[72] D.I. 14, Ex. A.
[73] *Id.*

15

substantial evidence which is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[74]

The evidentiary record provided does not reasonably support the Board's decision to treat the cervical and lumbar spinal injuries differently. The record is devoid evidence of differences between the two spinal injuries such that only the cervical injury is compensable, but not the lumbar. Without weighing the evidence or expert credibility, the Board's decision related to the lumbar injury is inconsistent. Thus, the Board's decision with respect to the lumbar spine should be reversed and remanded to the Board to determine whether that Claimant is compensated for the injuries and treatment of the cervical and lumbar spine.

### THE BOARD'S DECISIONS RELATED TO CLAIMANT'S RESOLUTION OF CONCUSSION SYMPTOMS AND THE LEFT ELBOW INJURY WERE BASED ON SUBSTANTIAL EVIDENCE

Claimant's appeal challenges the Board's decision denying compensation for continued concussion symptoms and his left elbow injury. Claimant contends neither finding was based on substantial evidence, because Dr. Patil's testimony showed Claimant's need for ongoing medication to manage headaches, and the

---

[74] *Thompkins v. Reynolds Transportation*, 2021 WL 99729, at *3 (Del. Super. Jan. 11, 2021) (quoting *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998)).

testimonies of Dr. Crain and Claimant showed the elbow injury relates to the work collision.[75]

While Claimant may disagree with the Board's analysis, it is not appropriate for the Court to review the accuracy of the Board's decision. The Court's role is merely to determine whether the Board's finding that Claimant's concussion has resolved is based on substantial evidence.[76] The Board's opinion explained its decision to deny compensation for both continued concussion symptoms and Claimant's left elbow injury required endorsing one doctor's opinion over the other.[77] The Board is authorized to do so.[78] Substantial evidence supports the Board's findings related to the ongoing concussion treatment and left elbow injury for the reasons that follow.

### A. RESOLUTION OF CONCUSSION SYMPTOMS

Claimant alleges the Board did not base its decision on substantial evidence when finding Claimant's concussive symptoms had resolved, because:

> the Board failed to acknowledge that Claimant was still on medication to address his headaches, and the treatment that the Board determined was reasonable and necessary included the dispensing and monitoring of that medication. As Dr. Patil testified, Mr. Maclary continued to have headaches as of January 2024 that were being controlled controlled [sic] with a prescription.[79]

---

[75] D.I. 14.

[76] *Wesley v. State*, 2021 WL 3783634, at *5 (Del. Super. Aug. 23, 2021).

[77] D.I. 14, Ex. A, pp. 29, 30.

[78] *See generally Wesley*, 2021 WL 3783634.

[79] D.I. 14.

17

The Board was not bound to accept the opinion of Dr. Patil that Claimant suffered from crash-related concussion treatment due to his orders of ongoing medication treatment.[80] Dr. Patil was not the only witness testifying to Claimant's continued concussion treatment. Dr. Bennett's testimony provided a detailed evaluation of Claimant's concussion recovery:

> Q: [B]ased upon the review of the records would it be fair to use Dr. Voltz's normal examination of August 16, 2022, as the cutoff to state that by that date, at the latest, whatever concussion he had sustained had resolved?
>
> A: I think that certainly you're giving him almost a year's worth. And by that time he's fully recovered…
>
> …
>
> Q: To the extent that the Claimant continues to endorse subjective symptoms, can you support or validate those in any objective way?
>
> A: No. We find, and I think studies have shown in the literature that those individuals who continue to have complaints ongoing, this would be over two years from the date of injury, we typically look for other comorbid issues, other medical problems…But clearly the effects of a concussion would have been long since resolved.
>
> Q: Even if you were to take the Claimant at face value about ongoing symptoms, does that, by itself, establish a causation link back to the accident?
>
> A: No. You look for other things and other issues, even medication side effects. The fact that he may be taking Topamax, we call that – in and of itself I would be concerned about that medication having adverse effects in terms of any subjective symptoms.

---

[80] *Id.* at Ex. D, pp. 8,9.

Q: Given your conclusion of resolution by August 16, 2022 at the latest, does that mean any treatment for the concussion after that date would not be considered reasonable, necessary, or causally related to the work accident?

A: I would certainly support that, yes.[81]

The Board's opinion adopted Dr. Bennett's testimony instead of Dr. Patil's in finding "Claimant's concussion, or a post-concussive condition are related to the work accident and have reached maximum medical improvement."[82] Endorsing one expert over another does not mean the decision lacks substantial evidence. The Board's decision quoted a portion of Dr. Bennett's testimony, "[Claimant] had long since fully recovered and had no symptoms or signs that suggest anything to indicate a persistent traumatic brain injury [pro]tracted post-concussion syndrome or anything of that nature."[83]

Dr. Bennett's testimony supported the Board's finding. His opinion explained that: (1) concussion symptoms persisting longer than two years after an accident should be investigated as a comorbidity or the result of a different injury; (2) Claimant's headaches are subjective complaints proving difficult to link back to the accident; (3) Claimant's medication could be causing the headaches; and finally (4)

---

[81] *Id.* at Ex. E, pp. 29-32.
[82] *Id.* at Ex. A, p. 29.
[83] D.I. 14, Ex. E, p. 27.

19

Claimant's concussion had fully resolved despite reporting ongoing headaches.[84] All of which support finding Claimants concussion symptoms have resolved.

Again, it is inappropriate for the Court to consider the weight or credibility of Dr. Bennett's testimony in comparison to Dr. Patil's. The inquiry before the Court is merely whether the Board adequately based its decision upon substantial evidence. Dr. Bennett's testimony meets the low threshold of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" to support the Board's finding that the concussive symptoms had resolved.[85] Therefore, the Board's decision finding Claimant's concussion symptoms had resolved is affirmed.

### B. LEFT ELBOW

Claimant's final argument on appeal challenges the Board's finding that the left elbow injuries are not causally related to the work accident.[86] This decision relied on Dr. Piccioni's review of Dr. Crain's report after examining Claimant. Dr. Crain testified Claimant "developed lateral epicondylitis of the left elbow,"[87] which Dr. Piccioni interpreted to mean the injury "usually comes from repetitive palm-down activities … But it cannot be related to this industrial accident in any way,

---

[84] *See Id.*

[85] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009) (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[86] *Id.* at Ex. A, p. 30.

[87] *Id.* at Ex. C, p. 14.

shape, or form, in my opinion because there's no causative factor."[88]  This testimony was persuasive to the Board.

Claimant asserts the Board inappropriately adopted the above portion of Dr. Piccioni's testimony while rejecting other aspects of his opinion.[89]  However, the Board is entitled to "accept or reject an expert's testimony in whole or in part."[90] While the Board rejected Dr. Piccioni's opinion "that if a claimant has not made a complaint to a doctor within four days of the work accident, all complaints made later will be rejected as not causally related to the work accident because of timing,"[91] the Board did not conclude, as Claimant suggests, that all injuries reported after the emergency room visit necessarily relate back to the collision.  The Board instead explained, "a causality analysis based solely on how many days have passed since the accident occurred before the claimant reported pain does not provide this Board with the needed medical information."[92]

The Board's causality analysis, which considered the one-year gap between the crash and left elbow symptoms, relied upon Dr. Crain's report that documented full range of motion in the left elbow after the collision,[93] and Dr. Crain's testimony

---

[88] *Id.* at Ex. F, pp. 53-54.
[89] *See Id.*
[90] *Arrants v. Home Depot*, 65 A.3d 610, 605 (Del. 2013) (citing *Person-Gaines*, 981 A.2d at 1161.
[91] D.I. 14, Ex. A, p. 28.
[92] *Id.*
[93] *Id.* at Ex. F, pp. 52-53.

that "[Claimant] developed lateral epicondylitis of the elbow."[94]  Although Dr. Crain testified the injury was related to the September 9, 2021, crash, the Board was not required to agree with Dr. Crain.   Addressing the weight of testimony is inappropriate; appellate review may only consider whether the evidence adequately supported the Board's decision.  The Court is satisfied that substantial evidence supports the Board's decision.[95]

Further, the Board's decision is so supported notwithstanding its rejection of Dr. Piccioni's opinion that injuries related to the crash should be related within days of the crash.  The alleged left elbow injury was reported for the first time one year post the crash.  There is no conflict in the Board's rejection of Dr. Piccioni's "three day rule" and this finding, because of the time difference.   The Board's decision was based on evidence beyond the delayed onset of left elbow symptoms.  Thus, the Board's decision regarding Claimant's left elbow injury is affirmed.

---

[94] *Id.* at Ex. C, p. 14 (emphasis added).
[95] *Person-Gaines*, 981 A.2d at 1161 (quoting *Olney*, 425 A.2d at 614).

## THE BOARD DID NOT ACT ARBITRARILY OR CAPRICIOUSLY IN REJECTING ONLY A PORTION OF DR. PICCIONI'S TESTIMONY

On cross-appeal, Employer first contends the Board's decision lacks substantial evidence "to support the inclusion of the neck and right shoulder as compensable injuries and to find an ongoing right foot/right great toe injury."[96] Employer specifically takes issue with the decision's sentence, "[w]hen it comes to injuries and the pain they can produce, the human body simply does not follow a rigid and pre-determined timeline such as the one placed on Claimant by Dr. Piccioni."[97] Employer alleges the Board "mischaracterized Dr. Piccioni's testimony, doing so in a manner that is arbitrary and capricious…as it took a section of Dr. Piccioni's testimony and used it as a launching point to attack his testimony."[98]

Contrary to this claim, the Board did not "single out one isolated facet of Dr. Piccioni's testimony" ignoring the rest, nor did the Board attack Dr. Piccioni's testimony in its entirety.[99] The Board rejected Dr. Piccioni's overarching notion that all injuries related to the collision should present themselves within a few days; the Board did not discredit Dr. Piccioni outright. When "presented with differing medical testimony [the Board is] free to reject, in full or in part, the testimony of one

---

[96] D.I. 16, p. 42.
[97] D.I. 14, Ex. A, p. 27.
[98] D.I. 16, pp. 43-44.
[99] *Id.* at p. 47.

23

physician based on its experience in gauging the testimony of witnesses who gave conflicting testimony."[100]   Such an evaluation does not create evidence based on "institutional experience."[101]

Employer appeals the Board's decisions related to Claimant's neck, right shoulder, and ongoing right toe injuries simply because the Board rejected Dr. Piccioni's opinion in reaching those outcomes.  Again, the Board was not obligated to adopt all of Dr. Piccioni's testimony.[102]  It is not this Court's place to interfere with the Board's credibility determination of Dr. Piccioni.   The testimonies of Doctors Eskander, Patil, Crain, as well as the testimony of Claimant himself, provides substantial evidence for the Board's determination to compensate for the injuries to Claimant's neck and right shoulder.   The testimonies presented sufficiently support the Board's respective decisions for the reasons that follow.  However, with respect to the ongoing nature of the injuries to Claimant's right toe, there was insufficient evidence to support the Board's conclusion.

## A. NECK

---

[100] *Id.* at 1215.

[101] *Id.* at 1216 ("[w]hatever 'institutional experience' or administrative expertise the Board possesses may be used as a tool for evaluating evidence but not as a source for creating evidence").

[102] *Id.* ("[a]ll that is required in rejecting the testimony of a medical witness is that the Board 'provide specific relevant reasons for doing so.'").

Dr. Eskander and Dr. Patil both testified with a reasonable degree of medical probability that Claimant's neck injury relates to the September 9, 2021, crash. The Board's decision accepted those testimonies in finding the neck and cervical pain are causally related to Claimant's work accident and remain unresolved.[103] Dr. Eskander's testimony explicitly states "[Claimant described] pain in the neck that radiates to both shoulders and arms…he denies any prior neck pain,"[104] leading to discovery of Claimant's cervical injuries, which Dr. Eskander believes is causally related to the September 9, 2021, crash.[105] Dr. Patil similarly noted, in November of 2021, "[Claimant] had tenderness and spasms of the cervical, that is the neck, and the lower back with approximately 35 percent loss of ranges of motion."[106] The two expert opinions documenting neck pain, for the first time, two months after the crash create more than a mere possibility that Claimant's neck injuries are related to the collision. Thus, the Board had adequate evidence to compensate Claimant his neck injury.

## B. RIGHT SHOULDER

Dr. Bennett, Employer's own expert, testified that both the right shoulder injury and right foot injury relate to the work collision:

---

[103] D.I. 14, Ex. A, p. 28.
[104] *Id.* at Ex. B, pp. 12-13.
[105] *Id.* at pp. 23.
[106] *Id.* at Ex. D, p. 10.

Q:      Okay.  But in your opinion he sustained injuries at least to his right foot and right shoulder?

A:      That's what the records indicate and that's what his history supports.[107]

In addition to Dr. Bennett, the Board was presented with evidence of Claimant's right shoulder pain, which was reported to two different doctors dating back to November of 2021.[108] Dr. Crain, who began treating Claimant in December of 2022, relied upon prior reports and noted "[Claimant] had injured his rotator cuff.  He had a partial tear of the rotator cuff and developed a posttraumatic bursitis and posttraumatic impingement from the automobile accident."[109]  The testimony and record evidence meets the low threshold of substantial evidence supporting the Board's finding that Claimant's right shoulder injury relates to the September of 2021 crash.

## C. RIGHT FOOT

The existence of Claimant's right foot injury is generally undisputed.[110] Nonetheless, Employer challenges the finding that the injury is unresolved.  The Court agrees with Employer that Claimant's experts, despite all recognizing the severity of his right foot injury, collectively do not mention ongoing treatment of

---

[107] *Id.* at Ex. E, p. 48-50.
[108] *Id.* at Ex. C, p. 8.
[109] *Id.* at p. 14.
[110] *Id.* at Ex. A, p. 26.

Claimant's right foot. Although Claimant himself described daily pain in his foot, ongoing issues planting his foot, and continued difficulty walking or utilizing stairs, Claimant's testimony alone cannot satisfy his burden of proof. [111] Without expert testimony identifying the need for ongoing treatment of Claimant's right foot, the Board did not have adequate evidence to find the right foot injury was unresolved. Therefore, the Court cannot sustain the Board's decision about the resolution of Claimant's right foot injury without a sufficient evidentiary record. This matter is remanded for the Board to articulate its findings on the ongoing nature of this injury from the record, if such evidence exists. If it does not, the Boead is to adjust its decision accordingly.

## RECURRENCE OF TOTAL DISABILITY

The Board determined Claimant had a recurrence of disability on September 10, 2023, when his PIP benefits expired, and agreed with Claimant's experts that he remains totally disabled.[112] As a result, the Board found Employer's workers' compensation carrier now responsible for Claimant's ongoing disability award, as Claimant remains totally disabled even after his PIP benefits expired. Employer

---

[111] *Id.* at Ex. G, pp. 29-30; *see also Wyrick v. Leaseway Auto Carriers*, 2002 WL 537591, at *4 (Del. Super. Apr. 10, 2002) ("[w]hile the Board obviously found his testimony credible, this Court finds that lay testimony cannot establish the reasonableness and necessity of the treatment rendered").

[112] D.I. 14, Ex. A, p. 31.

challenges this decision and accuses the Board of applying the wrong legal standard in determining recurrence of disability.[113]

Beginning with Claimant's status as totally disabled, "if a claimant is instructed by his treating physician that he or she is not to perform any work, the claimant will be deemed to be totally disabled during the period of the doctor's order."[114] The Board "accept[ed] the opinion of Claimant's doctors that he remains totally disabled."[115] This finding is consistent with testimony from nearly all of Claimant's treating physicians, who collectively instructed Claimant to stop working as a plumber so that he could properly recover from his injuries:

> Q: Okay. And fair to say that amongst yourself, Dr. Kader, and some of the other medical providers, throughout the records, at no point has Mr. Maclary been released to return to work?
>
> A: I'm unaware of any significant return-to-work period for Thomas at this point.[116]

To the extent Claimant was cleared to return to work, he was only permitted to resume sedentary duty. Nothing in the record indicates Claimant regained his same position before the crash. To the contrary, the evidence shows Claimant was

---

[113] D.I. 16.

[114] *Delhaize America, Inc. v. Baker*, 880 A2.d 1047 (Table) (Del. 2005) (citing *Gillard-Belfast v. Wendy's, Inc.*, 754 A.2d 251 (Del. 2000)).

[115] D.I. 14, Ex. A, p. 31.

[116] *Id.* at Ex. B, p. 25. Dr. Patil's testimony also states Claimant is not gainfully employable. D.I. 14, Ex. D, p. 24.

repeatedly instructed not to resume working, which supports the Board's finding of total disability. Its finding on this fact is upheld.

Whether the Board appropriately found "that the expiration of applied PIP benefits in this case operates as a change in condition sufficient to qualify as a recurrence of total disability,"[117] is less straightforward. "The term 'recurrence' is used in common parlance to describe the return of a physical impairment…As applied in most workmen's compensation cases, however, it is limited to the return of an impairment without the intervention of a new or independent accident."[118] The current framework of Delaware workers' compensation law does not interpret the exhaust of PIP benefits as a change in condition for determining recurrence of total disability. When PIP coverage and workers' compensation coverage overlap, a claimant has the right to exhaust both avenues for recovery.[119]

However, PIP exhaustion is not binding on a workers' compensation carrier, who may seek a medical examination of claimant for insight as to what injuries persist upon exhaustion of PIP.[120] Those findings may be presented to the Board. The workers' compensation carrier is not automatically responsible for a claimant's recovery upon exhausting the PIP benefits. The workers' compensation carrier

---

[117] *Id.* at Ex. A, p. 31.
[118] *Disabatino & Sons, Inc. v. Facciolo*, 306 A.2d 716, 719 (Del. 1973).
[119] *Cicchini v. State*, 640 A.2d 650, 653 (Del. Super. Ct. 1993).
[120] 19 *Del. C.* §2343.

becomes responsible if the Board, upon reviewing the treating physician's evaluation, finds the claimant remains totally disabled. That is precisely what occurred here.

Both Dr. Eskander and Dr. Patil testified to Claimant's continued inability to work as a plumber, even after the PIP benefits expired. To the contrary, Dr. Crain testified Claimant was cleared to work sedentary duty on August 8, 2023.[121] The Board is again "free to choose between conflicting medical expert opinions."[122] However, the Board's decision related to total disability goes beyond merely adopting the opinion of one expert over another. Here the Board inaccurately concluded the exhaustion of PIP itself serves as a recurrence of total disability. This is a misstatement of current Delaware workers' compensation law.

However, that mistake is inconsequential because substantial evidence supports the Board's finding that Claimant remains totally disabled. The Board accepted the opinion of Claimant's doctors in finding Claimant's "total disability status remains in effect"[123] after the PIP benefits exhausted, which obligates Employer to compensate Claimant for the agreed upon rate of $797.96 per week.[124] As such, the Court affirms the Board's decision requiring Employer compensate

---

[121] D.I. 16, pp. 11, Ex. F.
[122] *Glanden v. Land Prep. Inc.*, 918 A.2s 1098, 1102 (Del. 2007) (quoting *Disabatino Bros. Inc., v. Wortman*, 453 A.2d 102, 106 (Del. 1982).
[123] D.I. 14, Ex. A, p. 31.
[124] *Id.* at p. 32.

Claimant's total disability, while noting that the Board's reasoning was, in part, flawed.

**IV.    CONCLUSION**

For the foregoing reasons I recommend this Court **AFFIRM** the Board's decision in part and **REVERSE and REMAND** in part.

_____
Danielle J. Brennan, Judge

cc:    All parties LexisFile&Serve

31